United States District Court
for the
Southern District of Florida

| | |
|---|---|
| EGI-VSR, LLC, Petitioner, | ) |
| | ) |
| v. | ) Civil Action No. 15-20098-Civ-Scola |
| | ) |
| Juan Carlos Celestino Coderch | ) |
| Mitjans, Respondent. | ) |

### Omnibus Order on Motion to Quash, Motion to Strike, and Motion to Confirm Arbitration Award

This matter is before the Court upon the Respondent's motion to quash purported service of process and to dismiss petition to confirm international arbitration award (Mot., ECF No. 21.) In conjunction with the motion to quash, the Respondent also filed a motion to strike declarations (ECF No. 33.) The Court held a hearing on May 31, 2018. Following review of the motions and the arguments of counsel, the Court **denies** the motion to quash (**ECF No. 21**), **denies as moot** the motion to strike (**ECF No. 33**), and **grants** the motion to confirm the arbitration award (**ECF No. 1**).

**1. Background**

This case arises as a result of an investment in wine gone sour. The Petitioner EGI-VSR is a Delaware company that purchased over four million preferred shares of stock in October, 2005 in Viña San Rafael S.A. ("VSR"), a private corporation that produces and distributes wine. The Respondent is a Chilean citizen and a controlling shareholder of VSR, along with additional parties not named in the instant action. At the time of the Petitioner's initial purchase, the parties entered into a shareholders' agreement (the "Agreement") (ECF No. 1-3), which contains an arbitration clause and a provision stating that a breach by controlling shareholders would trigger a put right for the Petitioner, requiring the controlling shareholders to purchase all of the Petitioner's shares at a certain price within a certain amount of time. (*See id.* ¶ 10.) The Petitioner ultimately purchased additional shares, and made a total investment of approximately $17 million in VSR over four years.

In October, 2009, based upon numerous breaches of the Agreement by the controlling shareholders, including the Respondent, the Petitioner informed the controlling shareholders that it would exercise its put right, and invoked the arbitration clause in the Agreement. The parties participated in an arbitration in Chile, in which the arbitrator determined that the controlling

shareholders violated several sections of the Agreement and ordered them to buy the Petitioner's shares. (*See* Final Award, ECF No. 1-4.) The Respondent unsuccessfully challenged the Final Award.

The Petitioner filed this action in January, 2015, seeking to have this Court confirm the Final Award under the Panama and New York Conventions, and enter a judgment order setting forth the total price to be paid to the Petitioner for the shares the Respondent was to purchase according to the Final Award. The Petitioner then filed a notice, informing the Court that it had filed a request for service abroad of extrajudicial documents pursuant to the Inter-American Convention on Letters Rogatory, Jan. 30, 1975, O.A.S.T.S. No. 43, 1438 U.N.T.S. 288. (ECF No. 11.) Shortly after, the Petitioner requested that the Court grant an extension of time in which to effectuate foreign service anticipating that service would require at least a year, (ECF No. 12), which request the Court granted, and stayed this case requiring the Petitioner to inform the Court when service was effectuated. (ECF No. 13.) In October, 2017, the Court reopened this case upon the Petitioner's notice that service had been effectuated. (ECF No. 17.)

In the instant motion, the Respondent challenges service of process, and requests that the Court dismiss the petition for improper venue and on substantive grounds.

## 2. Legal Standard and Applicable Law

The parties do not dispute that the arbitration at issue here is governed by the Inter-American Convention on International Commercial Arbitration (opened for signature Jan. 30, 1975, O.A.S.T.S. No. 42, 1438 U.N.T.S. 245) (referred to interchangeably as both the "Panama Convention" and the "Inter-American Convention"). *See* 9 U.S.C. §§ 301-307 (implementing the Convention).[1] "Because the Final Arbitration Award was made in a nation that is a signatory of the Inter-American Convention, the Final Arbitration Award is

---

[1] With respect to enforcement matters and interpretation, the New York Convention on the Recognition and Enforcement of Foreign Arbitral Awards, June 10, 1958, 21 U.S.T. 2517, T.I.A.S. No. 6997, 330 U.N.T.S. 38 (effective for the United States on Dec. 29, 1970), reprinted in 9 U.S.C. §§ 201-208, and the Panama Convention are substantially identical. Thus the case law interpreting provisions of the New York Convention are largely applicable to the Panama Convention and vice versa. *See Corporacion Mexicana de Mantenimiento Integral, S. de R.L. de C.V. v. Pemex-Exploracion y Produccion*, 962 F. Supp. 2d 642, 653 (S.D.N.Y. 2013), *aff'd*, 832 F.3d 92 (2d Cir. 2016) ("The Panama Convention and . . . the []New York Convention[] are largely similar, and so precedents under one are generally applicable to the other.") (citing *Productos Mercantiles E Industriales, S.A. v. Faberge USA, Inc.,* 23 F.3d 41, 45 (2d Cir. 1994) ("The legislative history of the [Panama] Convention's implementing statute . . . clearly demonstrates that Congress intended the [Panama] Convention to reach the same results as those reached under the New York Convention" such that "courts in the United States would achieve a general uniformity of results under the two conventions.").

entitled to be recognized and enforced, unless an appropriate exception for non-recognition applies." *Nicor Int'l Corp. v. El Paso Corp.*, 292 F. Supp. 2d 1357, 1372 (S.D. Fla. 2003) (Marra, J.) (citing 9 U.S.C. § 304). "In 9 U.S.C. § 301, section 207 of the FAA is incorporated by reference and applied to Panama Convention awards." *Empresa De Telecommunicaciones De Bogota S.A. E.S.P. v. Mercury Telco Grp., Inc.*, 670 F. Supp. 2d 1357, 1361 (S.D. Fla. 2009) (Marra, J.). Section 207 provides that confirmation of an arbitral award falling under the Convention is mandatory "unless [a court] finds one of the grounds for refusal or deferral of recognition or enforcement of the award specified in the said Convention." 9 U.S.C. § 207. The Convention also contains a residual clause which provides that Chapter 1 of the FAA applies to actions brought under the Convention, so long as it does not conflict with the Convention or its implementing legislation. 9 U.S.C. § 208.

"A district court's review of a foreign arbitration award is quite circumscribed" and "there is a general pro-enforcement bias manifested in the Convention." *Four Seasons Hotels & Resorts B.V. v. Consorcio Barr, S.A.*, 613 F. Supp. 2d 1362, 1366, 1367 (S.D. Fla. 2009) (Moore, J.) (quotations and alterations omitted). It is really "only when an arbitrator strays from interpretation and application of the agreement and effectively dispenses his own brand of industrial justice that his decision may be unenforceable." *S. Mills, Inc. v. Nunes*, 586 F. App'x 702, 704 (11th Cir. 2014) (quoting *Stolt-Nielsen S.A. v. AnimalFeeds Int'l Corp.,* 559 U.S. 662, 671, (2010)) (quotations marks omitted).

### 3. Analysis
#### A. Service of process was valid

The Respondent first challenges service of process, arguing that the purported service was invalid under Brazilian law. The parties agree that in challenging service of process, a burden-shifting approach applies. The Respondent bears the initial burden of challenging service and detailing how service fell short of the procedural requirements. *Quantum Capital, LLC v. Banco De Los Trabajadores*, No. 1:14-cv-213193, 2014 WL 12519757, at *3 (S.D. Fla. Nov. 21, 2014) (Ungaro, J.) (internal citation omitted). The burden then shifts to the Petitioner to establish a prima facie case of proper service. *Id.* Assuming the Petitioner can establish proper service, the burden then shifts back to the Respondent, who must show "strong and convincing evidence" of insufficient service of process. *Id.*

The Respondent contends that service upon him in Brazil was invalid because he no longer lived in Brazil. The parties expend many pages of argument in their papers, and attach a host of exhibits, with respect to the

validity of service of process.[2] However, as previously stated, the Petitioner in this case availed itself of the Inter-American Convention on Letters Rogatory, which states in pertinent part that "[l]etters rogatory shall be executed in accordance with the laws and procedural rules of the State of destination." O.A.S.T.S. No. 43, 1438 U.N.T.S. 288, art. 10. The Convention also states that "[t]he authority of the State of destination shall have jurisdiction to determine any issue arising as a result of the execution of the measure requested in the letter rogatory." *Id.*, art. 11. In its response and supporting documents (ECF No. 30), the Petitioner represents that the Superior Judicial Tribunal in Brazil determined that the Respondent was properly served, a fact which the Respondent does not dispute. (*See* ECF No. 30-1 at 33-40.) The Respondent cites no legal authority indicating that it is proper for this Court to review a determination by the Brazilian court that service of process was carried out in accordance with Brazilian law in this case. Rather, the Respondent should have challenged service of process in Brazil. As a result, the Respondent's attempt to challenge service of process before this Court is improper.

Nevertheless, even if the Respondent's challenge were proper, he has not presented strong and convincing evidence that the process undertaken in Brazil was improper or insufficient. Indeed, the materials submitted by the parties reflect that the Respondent took action to terminate his Brazilian residency after the initial attempts to serve him at his apartment in Rio de Janeiro failed. Thereafter, the Brazilian court determined that the Respondent was evading service of process, permitted service of process by *hora certa*, and certified that service had been carried out. (ECF No. 30-11 at 38.) There was ample evidence presented to the Brazilian court to substantiate its finding that the Respondent was evading service. Therefore, the Respondent has failed to make the necessary showing.

### B. The Final Award should be confirmed

Much like his challenge to service of process, the Respondent's challenge to the Petitioner's request for confirmation of the underlying arbitration award is misplaced.

First, the Respondent argues that the motion to confirm the arbitration award should be dismissed under Rule 12(b)(3) of the Federal Rules of Civil Procedure for improper venue. In proceedings to confirm an arbitration award under the Federal Arbitration Act, venue lies in "any such court in which save for the arbitration agreement an action or proceeding with respect to the controversy between the parties could be brought, or in such court for the

---

[2] In addition, the Respondent seeks to have several of the exhibits stricken. (*See* Mot. to Strike, ECF No. 33.)

district and division which embraces the place designated in the agreement as the place of arbitration if such place is within the United States." 9 U.S.C. § 204. The Respondent argues that venue is improper because the underlying action could not have been brought in this district under the general venue statute, and the arbitration took place in Chile.

The general venue statute states that "a defendant not resident in the United States may be sued in any judicial district." 28 U.S.C. § 1391(c)(3). The Respondent is not a resident of the United States. Nevertheless, the Respondent also appears to be mounting a challenge to personal jurisdiction and arguing forum non conveniens, in that he maintains that this action could not have been brought in this district because the underlying controversy has no connection to this district. However, the issue of venue is distinct from the issue of personal jurisdiction and the Respondent once again fails to support his additional arguments with citations to authority. Generally, a "litigant who fails to press a point by supporting it with pertinent authority, or by showing why it is sound despite a lack of supporting authority or in the face of contrary authority, forfeits the point. The court will not do his research for him." *Phillips v. Hillcrest Medical Ctr.,* 244 F.3d 790, 800 n.10 (10th Cir. 2001) (internal quotation omitted); *see also McPherson v. Kelsey*, 125 F.3d 989, 995-96 (6th Cir. 1997) ("Issues adverted to in a perfunctory manner, unaccompanied by some effort at developed argumentation, are deemed waived. It is not sufficient for a party to mention a possible argument in the most skeletal way, leaving the court to put flesh on its bones.") (internal quotation omitted). Thus, the Court does not consider these arguments.

Next, the Respondent argues that the Petitioner's motion to confirm the arbitration award should be dismissed because it is a non-monetary award and therefore not recognized under Florida's Uniform Out-of-Country Foreign Money Judgment Recognition Act, Fla. Stat. §§ 55.601-55.607 (the "Uniform Act"), and recognition of it would violate public policy. In addition, the Respondent maintains that the Court cannot confirm the award as requested because it would substantially modify the Final Award. In response, the Petitioner contends that the Uniform Act does not apply, that the Respondent has not proven that any exceptions under the Panama Convention to the recognition of the Final Award apply, and that the Final Award is a calculable monetary award. The Court considers each argument in turn.

Although the Uniform Act applies to the recognition of foreign judgments, the Respondent fails to point to any authority indicating that the Final Award is a judgment and that the Uniform Act applies in this case. The Respondent

points to Article 4 of the Panama Convention,[3] which states in pertinent part, that "[a]n arbitral decision or award that is not appealable under the applicable law or procedural rules shall have the force of a final judicial judgment." O.A.S.T.S. No. 42, 1438 U.N.T.S. 245, art. 4. However, the Respondent fails to point to any authority indicating that giving an arbitral award the force of a final judicial judgment pushes such awards into the purview of the Uniform Act. The Uniform Act defines an "out-of-country foreign judgment" as "any judgment of a foreign state granting or denying recovery of a sum of money . . . ." Fla. Stat. § 55.602(2). The Final Award in this case was rendered by an arbitrator, and not a foreign state; thus, the Court is not persuaded that the Uniform Act applies.

In addition, the case from this district that the Respondent relies upon in support of his argument indicates that the Uniform Act does not apply to an international arbitration award. *Nicor Int'l Corp.*, 292 F. Supp. 2d at 1372. In *Nicor*, the court confirmed an arbitration award after determining that the Panama Convention properly applied to the award involved, and evaluating whether any of the grounds for non-recognition set forth in the New York Convention, and incorporated by reference into the Panama Convention, applied. *Id.* at 1375.

Thus, the Court may only refuse to confirm the arbitration award if one of the exceptions applies. *See* 9 U.S.C. § 207. The Panama Convention specifies as follows:

> 1. The recognition and execution of the decision may be refused, at the request of the party against which it is made, only if such party is able to prove to the competent authority of the State in which recognition and execution are requested:
>
> a. That the parties to the agreement were subject to some incapacity under the applicable law or that the agreement is not valid under the law to which the parties have submitted it, or, if such law is not specified, under the law of the State in which the decision was made; or
>
> b. That the party against which the arbitral decision has been made was not duly notified of the appointment of the arbitrator or of the arbitration procedure to be followed, or was unable, for any other reason, to present his defense; or
>
> c. That the decision concerns a dispute not envisaged in the agreement between the parties to submit to arbitration;

---

[3] As previously stated, the parties in the instant case do not dispute that the Panama Convention applies.

nevertheless, if the provisions of the decision that refer to issues submitted to arbitration can be separated from those not submitted to arbitration, the former may be recognized and executed; or

      d. That the constitution of the arbitral tribunal or the arbitration procedure has not been carried out in accordance with the terms of the agreement signed by the parties or, in the absence of such agreement, that the constitution of the arbitral tribunal or the arbitration procedure has not been carried out in accordance with the law of the State where the arbitration took place; or

      e. That the decision is not yet binding on the parties or has been annulled or suspended by a competent authority of the State in which, or according to the law of which, the decision has been made.

      2. The recognition and execution of an arbitral decision may also be refused if the competent authority of the State in which the recognition and execution is requested finds:

      a. That the subject of the dispute cannot be settled by arbitration under the law of that State; or

      b. That the recognition or execution of the decision would be contrary to the public policy ("ordre public") of that State.

O.A.S.T.S. No. 42, 1438 U.N.T.S. 245, art. 4. The Respondent fails to set forth a sufficient basis upon which any of the exceptions would apply in this case.[4] Indeed, the only specifically asserted exception is that recognition of the Final Award would offend public policy; however, the Respondent premises this argument upon his incorrect assumption that the Uniform Act applies in this case. As such, the argument is without merit.

      Finally, the Respondent argues that the Final Award cannot be confirmed as requested in the petition because the judgment the Petitioner seeks substantially modifies the Final Award. Part of the Respondent's argument appears to turn on his contention that the Final Award does not in fact award a damage amount, but the argument again is premised upon the Respondent's additional contention—which the Court has already rejected—that the Final Award must be a judgment in order to be enforceable. The Final Award clearly sets forth the manner in which to calculate the amount owed by the Respondent based upon a finding by the arbitrator that he failed to comply

---

[4] Notably, the Panama Convention does not except awards in the nature of specific performance—as the Respondent contends the Final Award is in this case—which characterization nevertheless is inaccurate.

with his obligation under the parties' Agreement, to repurchase the Petitioner's shares pursuant to its put right. (*See* Final Award, ECF No. 1-5 at 103-104.)

In response, the Petitioner has provided the Court with a detailed breakdown of its calculations, in accordance with the provisions of the Final Award, of the amount for which it seeks confirmation. (*See* ECF No. 30-7 at 6-14.) Nevertheless, the Respondent takes issue with the Petitioner's conversion of the amount from Unidades de Fomento ("UF") to United States dollars because the Agreement requires the amount to be in Chilean pesos, arguing that utilizing the UF rate (which adjusts for inflation) on the date that payment was due under the Final Award (January 23, 2012), results in an inflated award amount.

The Respondents' contention fails. First, the Final Award specifically sets an applicable rate in UF, not Chilean pesos, as the basis for calculating the appropriate Preferred Purchase Price. If the Respondent believed that the Agreement required something different, it was incumbent upon him to make that challenge before the arbitrator. Second, a review of the calculations reveals that the Petitioner first performed the calculation of the Preferred Purchase Price per share as set forth in paragraph 4 of the Final Award, then converted the applicable UF rate to Chilean pesos, and then to United States dollars on the date that payment became due under the Final Award. The Respondent points to no authority, nor has the Court found any, indicating that the conversion to dollars is improper. Moreover, to the extent that the Respondent argues that earlier conversion rates (i.e., from 2005 to 2009) should apply because of the dates specifically mentioned in the Final Award, it is clear that these dates relate to the start dates for calculation of interest based upon the dates that the Petitioner made each stock purchase.

### 4. Conclusion

For the reasons stated above, the Respondent has failed to demonstrate that the Court should not confirm the Final Award in this case. Accordingly, the Court **denies** the Respondent's motion to quash and to dismiss (**ECF No. 21**). The motion to strike (**ECF No. 33**) is **denied as moot**, and the motion to confirm the arbitration award (**ECF No. 1**) is **granted**. The Petitioner shall submit its proposed judgment to the Court in Word format for entry. The Clerk of Court is directed to **close** this case.

**Done and ordered** at Miami, Florida on May 31, 2018.

_____
Robert N. Scola, Jr.
United States District Judge