THE UNITED STATES DISTRICT COURT
FOR THE SOUTHERN DISTRICT OF FLORIDA

CASE NO.: 15-20098-CIV-SCOLA/OTAZO-REYES
(PROCEEDINGS SUPPLEMENTARY)

EGI-VSR, LLC,

    Plaintiff,

v.

JUAN CARLOS CELESTINO
CODERCH MITJANS a/k/a JUAN CODERCH,
and NA TOPCO CORP.,

    Defendants.
_____/

## OMNIBUS REPORT AND RECOMMENDATION

THIS CAUSE came before the Court upon the following motions:

(1) Defendant Juan Carlos Celestino Coderch Mitjans' ("Coderch") Motion to Dismiss Supplemental Complaint (hereafter, "Coderch's Motion to Dismiss") [D.E. 182];

(2) Defendant NA Topco Corp.'s ("Topco") Motion to Dismiss Count One of Supplemental Complaint (hereafter, "Topco's Motion to Dismiss") [D.E. 204]; and

(3) Defendant Coderch's Supplement to Motion to Dismiss and Joinder in Topco's Motion to Dismiss (hereafter, "Coderch's Supplemental Motion to Dismiss") [D.E. 206].

These matters were referred to the undersigned pursuant to 28 U.S.C. § 636 by the Honorable Robert N. Scola, Jr., United States District Judge [D.E. 188, 205]. The undersigned held hearings on these matters on June 25, 2019 and October 28, 2019 [D.E. 201, 240]. For the reasons stated below, the undersigned respectfully recommends that Coderch's Motion to Dismiss and Supplemental Motion to Dismiss and Topco's Motion to Dismiss be DENIED.

## **PROCEDURAL BACKGROUND**

Plaintiff EGI-VSR, LLC ("Plaintiff" or "EGI") commenced this action on January 12, 2015 with the filing of a Petition to Confirm International Arbitral Award (hereafter, "Petition") [D.E. 1]. The Petition alleges subject matter jurisdiction pursuant to the Federal Arbitration Act, 9 U.S.C. §§ 203, 301 and 302, and the federal jurisdiction statute, 28 U.S.C. § 1331. See Petition [D.E. 1 at 2]. The arbitration dispute underlying the Petition related to a shareholder agreement involving the stock of private company that produces and distributes wine, Viña San Rafael S.A. ("VSR"), in which EGI was a minority shareholder and Coderch was a controlling shareholder. Id. at 3-4. EGI prevailed on its claim that the VSR controlling shareholders, including Coderch, had breached the shareholder agreement and obtained a final arbitration award in its favor. Id. at 5-6. The arbitration award required the controlling shareholders to buy back EGI's shares in VSR and set forth a method for computing the purchase price. Id. In its Petition, EGI sought a judgment confirming the award in the amount computed pursuant to the prescribed methodology, plus post-award interest, plus attorney's fees and costs. Id. at 10.

On October 19, 2017, EGI filed proof of foreign service on Coderch [D.E. 16]. On November 17, 2017, Coderch moved to quash service and dismiss the Petition [D.E. 21]. On May 31, 2018, the Court denied Coderch's motion and confirmed the arbitration award. See Omnibus Order on Motion to Quash, Motion to Strike, and Motion to Confirm Arbitration Award [D.E. 41]. On June 4, 2018, the Court entered Final Judgment in favor of EGI and against Coderch in the amount of $28,700,450.07, plus post-judgment interest [D.E. 43]. On June 18, 2018, Coderch appealed the Final Judgment [D.E. 44].[1]

On June 21, 2018, EGI commenced seeking post-judgment discovery from Coderch. See

---

[1] Coderch did not post a *supersedeas* bond.

EGI's Motion to Order Judgment Debtor to Complete Fact Information Sheet [D.E. 46].[2] Over the next several months, EGI sought writs of garnishment against various entities, and discovery from Coderch and third parties. See generally [D.E. 57 - 161 (some under seal)].

On March 1, 2019, EGI filed a Motion to Institute Proceedings Supplementary to Execution and to Implead Third Party (hereafter, "Motion for Proceedings Supplementary") [D.E. 162]. On March 19, 2019, the undersigned granted EGI's Motion for Proceedings Supplementary [D.E. 172]. Thereafter, EGI filed its Supplemental Complaint against Coderch and Topco [D.E. 173].[3] In its supplemental pleading, EGI asserts the following claims:

Count I:   Alter Ego.

Count II:  Avoidance of Fraudulent Transfers Pursuant to Florida Statutes § 56.29.

Count III: Avoidance of Fraudulent Transfers and Recovery Pursuant to Florida Statutes §§ 726.105(1), 726.108 and 726.109.

See Supp. Compl. [D.E. 173 at 13-18].

In his Motion to Dismiss, Coderch argues that he is not a proper party to the fraudulent transfer claims asserted in Counts II and III; that alter ego theories asserted in Count I are improper in a supplemental complaint that is based on ancillary jurisdiction; and that he was not served by process server with the Supplemental Complaint. See Coderch's Motion to Dismiss [D.E. 182]. In its response to Coderch's Motion to Dismiss, EGI stated that "diversity exists in these proceedings." See EGI's Response to Coderch's Motion to Dismiss [D.E. 191 at 13 n.4]. EGI subsequently conceded, however, that the Court lacks diversity jurisdiction in these proceedings supplementary because one of its members is a resident of Florida and so is Topco. See EGI's Notice [D.E. 203]; see also Supp. Compl. [D.E. 173 at 4-5].

In its Motion to Dismiss, which is limited to the alter ego claim asserted in Count I,

---

[2] On September 21, 2018, Coderch filed a Notice of Serving Fact Information Sheet [D.E. 88].
[3] A sealed version of the Supplemental Complaint is found at D.E. 167-1.

Topco argues that this Court lacks ancillary jurisdiction over that claim. See Topco's Motion to Dismiss [D.E. 204].[4] In his Supplemental Motion to Dismiss, Coderch renews his own and joins in Topco's jurisdictional argument as to Count I. See Coderch's Supplemental Motion to Dismiss [D.E. 206].

## APPLICABLE LAW

### 1. *Ancillary jurisdiction over the alter ego claim asserted in Count I.*

In Peacock v. Thomas, 516 U.S. 349 (1996), the United States Supreme Court explained that federal courts may exercise ancillary jurisdiction for two purposes:

> "(1) to permit disposition by a single court of claims that are, in varying respects and degrees, factually interdependent; and (2) to enable a court to function successfully, that is, to manage its proceedings, vindicate its authority, and effectuate its decrees."

Id. at 354 (quoting Kokkonen v. Guardian Life Ins. Co., 511 U.S. 375, 379-80 (1994)).

With regard to the first basis for ancillary jurisdiction, the Supreme Court explained that:

> [a]ncillary jurisdiction may extend to claims having a factual and logical dependence on the primary lawsuit, . . . but that primary lawsuit must contain an independent basis for federal jurisdiction. . . . The basis of the doctrine of ancillary jurisdiction is the practical need to protect legal rights or effectively to resolve an entire, logically entwined lawsuit.

Id. at 355 (citations and quotations omitted).

With regard to the second basis for ancillary jurisdiction, the Supreme Court noted that it had approved the exercise of such jurisdiction "over a broad range of supplementary proceedings involving third parties to assist in the protection and enforcement of federal judgments— including attachment, mandamus, garnishment, and the prejudgment avoidance of fraudulent conveyances." Id. at 356 (citations omitted). The Supreme Court added that its

> recognition of these supplementary proceedings has not, however, extended beyond attempts to execute, or to guarantee eventual executability of, a federal

---

[4] Topco had previously answered the Supplemental Complaint [D.E. 181].

4

judgment. We have never authorized the exercise of ancillary jurisdiction in a subsequent lawsuit to impose an obligation to pay an existing federal judgment on a person not already liable for that judgment.

Id. at 357. The Supreme Court nevertheless left open the possibility that "extraordinary circumstances" might justify ancillary jurisdiction over such a lawsuit. Id. at 359.

In Nat'l Maritime Servs., Inc. v. Straub, 776 F.3d 783 (11th Cir. 2015), the Eleventh Circuit Court of Appeals applied Peacock to determine that the district court had ancillary jurisdiction over supplementary proceedings in which the plaintiff, National Maritime, sought to disgorge a fraudulently transferred asset from a defendant, Straub, who was not personally liable for the judgment that had been entered against his co-defendant, Burrell Shipping. Id. at 787. The Eleventh Circuit explained:

> Straub is not personally liable for the judgment against Burrell Shipping. . . . Straub's liability is limited instead to the proceeds that Burrell Shipping fraudulently transferred to him. If the value of the transferred proceeds was less than the value of the judgment against Burrell Shipping, National Maritime would have no recourse against Straub for the excess amount. The claim asserted by National Maritime is not "a new lawsuit [that] impose[s] liability for a judgment on a third party."

Id. (quoting Peacock, 516 U.S. at 359) (some alterations in original) (citations omitted).

In Straub, the Eleventh Circuit distinguished its prior ruling in Jackson-Platts v. Gen. Elec. Capital Corp., 727 F.3d 1127 (11th Cir. 2013), where a supplementary proceeding was described as a "suit involving a new party litigating the existence of a new liability," id. at 1135, as follows:

> In Jackson-Platts, the plaintiff brought the supplementary proceeding to impose liability for the entire judgment on new defendants who had conspired to strip the original defendants of all of their assets. . . . In contrast, National Maritime sought to recover only a fraudulently transferred asset from a third party.

Straub, 776 F.3d at 788 (citation omitted).

In Forster v. Nations Funding Source, Inc. 648 F. App'x 850 (11th Cir. 2016), the

5

Eleventh Circuit remanded an action to the district court to determine whether it had subject matter jurisdiction to entertain an alter ego claim in proceedings supplementary. Id. at 852. The Eleventh Circuit further directed the district court to determine whether the alter ego claim was "a permissible 'attempt[] to execute, or to guarantee eventual executability of, a federal judgment,' or an impermissible endeavor 'to impose an obligation to pay an existing federal judgment on a person not already liable for that judgment." Id. (quoting Peacock, 516 U.S. at 367) (alteration in original). As an alternative, the Eleventh Circuit directed the district court to consider the potential existence of diversity jurisdiction. Id.

In U.S.I. Props. Corp. v. M.D. Constr. Co., 230 F.3d 489 (1st Cir. 2000), the First Circuit Court of Appeals rejected an attempt to hold a third party, the Commonwealth of Puerto Rico, accountable for an existing judgment against a defendant in the underlying case, where the only basis for jurisdiction was the ancillary jurisdiction enforcement prong. Id. at 499-500. The First Circuit noted, however:

> We do not answer the question of whether there is federal enforcement jurisdiction for any possible scenario involving an alter ego claim. We do not rule out the possibility that some alter ego claims will present sufficiently intertwined factual issues to warrant federal courts to assume pendent jurisdiction over the claims.

Id. at 499 n.9.

### 2. *Elements of the fraudulent transfer claims asserted in Counts II and III.*

Count II of the Supplemental Complaint invokes Section 56.29 of the Florida Statutes, which governs proceedings supplementary and provides, in pertinent part:

> When, within 1 year before the service of process on the judgment debtor in the original proceeding or action, the judgment debtor has had title to, or paid the purchase price of, any personal property to which the judgment debtor's spouse, any relative, or any person on confidential terms with the judgment debtor claims title and right of possession, the judgment debtor has the burden of proof to establish that such transfer or gift was not made to delay, hinder, or defraud

creditors.

Fla. Stat. § 56.29(3)(a).

Count III of the Supplemental Complaint invokes Sections §§ 726.105(1), 726.108 and 726.109 of the Florida Statutes, which govern fraudulent transfers. Section 726.105(1) provides:

> (1) A transfer made or obligation incurred by a debtor is fraudulent as to a creditor, whether the creditor's claim arose before or after the transfer was made or the obligation was incurred, if the debtor made the transfer or incurred the obligation:
>
> (a) With actual intent to hinder, delay, or defraud any creditor of the debtor; or
>
> (b) Without receiving a reasonably equivalent value in exchange for the transfer or obligation, and the debtor:
>
> 1. Was engaged or was about to engage in a business or a transaction for which the remaining assets of the debtor were unreasonably small in relation to the business or transaction; or
>
> 2. Intended to incur, or believed or reasonably should have believed that he or she would incur, debts beyond his or her ability to pay as they became due.

Fla. Stat. § 726.105(1). Sections 726.108 and 726.109 prescribe the remedies of creditors and the defenses, liability and protection of transferees, respectively. Fla. Stat. §§ 726.108, 726.109.

### *3. Service of Supplemental Complaint*

Rule 69 of the Federal Rules of Civil Procedure provides that:

> A money judgment is enforced by a writ of execution, unless the court directs otherwise. The procedure on execution--and in proceedings supplementary to and in aid of judgment or execution--must accord with the procedure of the state where the court is located, but a federal statute governs to the extent it applies.

Fed. R. Civ. P. 69(a)(1). Florida's statute governing proceedings supplementary provides, in pertinent part:

> The court may entertain claims concerning the judgment debtor's assets brought under chapter 726 and enter any order or judgment, including a money judgment against any initial or subsequent transferee, in connection therewith, irrespective of whether the transferee has retained the property. Claims under chapter 726

7

> brought under this section shall be initiated by a supplemental complaint and served as provided by the rules of civil procedure, and the claims under the supplemental complaint are subject to chapter 726 and the rules of civil procedure. The clerk of the court shall docket a supplemental proceeding under the same case number assigned to the original complaint filed by the judgment creditor or the case number assigned to a judgment domesticated pursuant to s. 55.01, shall assign a separate supplemental proceeding number, and shall assign such supplemental proceeding to the same division and judge assigned to the main case or domesticated judgment.

Fla. Stat. § 56.29(9)

**DISCUSSION**

Coderch and Topco challenge the Court's exercise of ancillary jurisdiction over the alter ego claim asserted by EGI in Count I of the Supplemental Complaint.[5] Coderch also argues that he is not a proper party to the fraudulent transfer claims asserted by EGI in Counts II and III of the Supplemental Complaint. Finally, Coderch argues that he was not served by process server with the Supplemental Complaint. The undersigned addresses each of these arguments in turn.

### 1. *Whether the Court has ancillary jurisdiction over the alter ego claim asserted in Count I.*

Peacock teaches that ancillary jurisdiction may be exercised for the following two purposes: to address interdependent claims; and to effectuate judgments. Peacock, 516 U.S. at 354. The first prong of ancillary jurisdiction applies to claims that have "a factual and logical dependence on the primary lawsuit," which, in turn, "must contain an independent basis for federal jurisdiction." Id. at 355 (quoting Owen Equip. & Erection Co. v. Kroger, 437 U.S. 365, 376 (1978)). The second prong of ancillary jurisdiction is limited to "attempts to execute or to guarantee eventual executability of, a federal judgment" and does not extend to "impos[ing] an obligation to pay an existing federal judgment on a person not already liable for that judgment,"

---

[5] As noted above, EGI has conceded that there is no diversity jurisdiction in these proceedings supplementary.

absent "extraordinary circumstances." Id. at 357, 359 (citing H.C. Cook Co. v. Beecher, 217 U.S. 497 (1910)).

The enforcement prong of ancillary jurisdiction permits the assertion of fraudulent transfer claims against third parties in proceedings supplementary. Straub, 776 F.3d at 787. Thus, Coderch and Topco do not challenge the Court's exercise of ancillary jurisdiction over the fraudulent transfer claims asserted by EGI in Counts II and III of the Supplemental Complaint. However, Coderch and Topco argue that the alter ego claim asserted by EGI in Count I impermissibly seeks to impose on Topco the obligation to pay for the entire judgment entered in this case. Peacock indeed states in clear language, which has been repeated by the Eleventh Circuit, that the enforcement prong of ancillary jurisdiction does not extend to "impos[ing] an obligation to pay an existing federal judgment on a person not already liable for that judgment," absent "extraordinary circumstances." Id. at 357, 359 (citing Beecher, 217 U.S. at 497).

EGI first attempts to restrict Peacock's limiting language to situations involving separate lawsuits as opposed to proceedings supplementary brought in the same action as the underlying judgment. However, the Eleventh Circuit's application of Peacock to the proceedings supplementary in Straub belies such distinction. EGI also argues that this case presents the extraordinary circumstances mentioned by the Peacock Court as a possible exception to the prohibition against invoking ancillary jurisdiction to impose new liability for a judgment on a third party. However, there is nothing extraordinary in EGI's attempt to collect its arbitration award in federal court.

In the alternative, EGI argues that the assertion of ancillary jurisdiction over the alter ego claim is proper under the first prong, which applies to claims that have "a factual and logical dependence on the primary lawsuit," which, in turn, "must contain an independent basis for

Case 1:15-cv-20098-RNS   Document 251   Entered on FLSD Docket 11/26/2019   Page 10 of 13

federal jurisdiction." Id. at 355 (quoting Kroger, 437 U.S. at 376). EGI's Petition does contain an independent basis of jurisdiction, namely, the Federal Arbitration Act, 9 U.S.C. §§ 203, 301 and 302, and 28 U.S.C. § 1331. See Petition [D.E. 1 ¶ 4]. EGI contends that the required factual and logical connection is satisfied by the following allegations in the Petition and the Supplemental Complaint, respectively:

> Respondent, on information and belief, has for many years been continuously and actively involved in real estate ownership, development and management in the greater Miami area through the Florida companies, some of which own real property in Broward County, Florida, and has used one or more of these corporations to shield personal assets which should be available to satisfy part of the international final arbitration award that has been issued against him and in favor of EGI-VSR.

See Petition [D.E. 1 ¶ 11].

> Juan Coderch formed Topco as a sham corporation to use in his scheme to fraudulently and improperly avoid his debts to his creditors, including his $28.7 million debt to EGI-VSR.
>
> ***
>
> With full knowledge of his debt to EGI-VSR and while the arbitration was pending, Juan Coderch and his family formed Topco as a sham to defraud EGI-VSR in October 2010.

See Supp. Compl. [D.E. 173 ¶¶ 2, 65].

Thus, in both the Petition and the Supplemental Complaint, EGI alleges that Coderch has used corporate entities to avoid paying the arbitration award entered against him. On this basis, the undersigned finds that the alter ego claim in the Supplemental Complaint has "a factual and logical dependence" on the Petition so that the exercise of ancillary jurisdiction, under its first prong, over the alter ego claim asserted in Count I of the Supplemental Complaint is proper. Peacock, 516 U.S. at 355; see also U.S.I. Props., 230 F.3d at 499 n.9 ("We do not rule out the

10

possibility that some alter ego claims will present sufficiently intertwined factual issues to warrant federal courts to assume pendent jurisdiction over the claims.").

### 2. *Whether Coderch is a proper party to the fraudulent transfer claims asserted in Counts II and III.*

Coderch first argues that he should not be a party to the fraudulent transfer claims asserted in Counts II and III because EGI may only obtain relief pursuant to these claims, if any, from Topco as the alleged transferee, and not from Coderch as the alleged judgment debtor and transferor. EGI acknowledges that its prayer for relief as to these two Counts is only directed at Topco. See Supp. Compl. [D.E. 173 at 15-18].

However, Section 56.29 of the Florida Statutes, upon which Count II is predicated, places on the judgment debtor the burden of proof to establish that the transfer at issue "was not made to delay, hinder, or defraud creditors." See Fla. Stat. § 56.29. Thus, dismissal of Coderch from Count II would be improper.

Section 726.105(1) of the Florida Statutes, in turn, requires proof of facts involving the judgment debtor, such as: whether the transfer at issue was made "[w]ith actual intent to hinder, delay, or defraud any creditor of the debtor;" or was made "[w]ithout receiving a reasonably equivalent value" while the debtor's remaining assets "were unreasonably small" or the debtor was incurring "debts beyond his or her ability to pay." See Fla. Stat. § 726.105(1). Given that Coderch is already a party as to Counts I and II, he may be included as a permissive party in Count III. See Fed. R. Civ. P. 20(3) ("The court may grant judgment . . . against one or more defendants according to their liabilities.").

Coderch also argues that, on their face, the transfers to Topco alleged to be fraudulent, did not come directly from him. Given EGI's allegations in the Petition and the Supplemental Complaint that Coderch has used corporate entities to avoid paying the arbitration award entered

11

against him, *see supra,* Section 1, the issue of which of the alleged transfers to Topco, if any, are the subject of Counts II and III is more appropriately decided at the summary judgment or the trial stage. Thus, it would be improper to dismiss Coderch from these claims at the motion to dismiss stage.

### 3. *Whether Coderch had to be served by process server with the Supplemental Complaint.*

In arguing that the Supplemental Complaint should have been served on him by process server rather than by serving his counsel, Coderch relies on the following language from Fla. Stat. § 56.29, with which these proceedings supplementary "must accord" by operation of Fed. R. Civ. P. 69: "Claims under chapter 726 brought under this section shall be initiated by a supplemental complaint and served as provided by the rules of civil procedure." See Fla. Stat. § 56.29. Initially, notwithstanding his improper attempt to relitigate this issue, Coderch is already a properly served party to this action.[6] Moreover, nothing in the foregoing language references a requirement for service of the Supplemental Complaint by process server. Therefore, the undersigned finds this argument to be wholly lacking in merit.

---

[6] See Omnibus Order on Motion to Quash, Motion to Strike, and Motion to Confirm Arbitration Award [D.E. 41].

## RECOMMENDATION

Based on the foregoing considerations, the undersigned RESPECTFULLY RECOMMENDS that Coderch's Motion to Dismiss and Supplemental Motion to Dismiss [D.E. 182, 206] and Topco's Motion to Dismiss [D.E. 204] be DENIED.

Pursuant to Local Magistrate Judge Rule 4(b), the parties have **fourteen** days from the date of this Report and Recommendation to file written objections, if any, with the Honorable Robert N. Scola, Jr. Failure to timely file objections shall bar the parties from attacking on appeal the factual findings contained herein. See Resolution Tr. Corp. v. Hallmark Builders, Inc., 996 F.2d 1144, 1149 (11th Cir. 1993). Further, "failure to object in accordance with the provisions of [28 U.S.C.] § 636(b)(1) waives the right to challenge on appeal the district court's order based on unobjected-to factual and legal conclusions." See 11th Cir. R. 3-1 (I.O.P. - 3).

RESPECTFULLY SUBMITTED in Miami, Florida this 25th day of November, 2019.

ALICIA M. OTAZO-REYES
UNITED STATES MAGISTRATE JUDGE

cc: United States District Judge Robert N. Scola, Jr.
Counsel of Record