IN THE UNITED STATES DISTRICT COURT
FOR THE SOUTHERN DISTRICT OF FLORIDA
MIAMI DIVISION

CASE NO. 15-20098-CIV-SCOLA—OTAZO-REYES

| | |
|---|---|
| EGI-VSR, LLC, | ) |
| | ) |
| Petitioner, | ) |
| | ) |
| v. | ) |
| | ) |
| JUAN CARLOS CELESTINO | ) |
| CODERCH MITJANS A/K/A | ) |
| JUAN CODERCH, | ) |
| | ) |
| Respondent. | ) |
| | ) |

**CODERCH'S OBJECTIONS TO AND APPEAL OF MAGISTRATE JUDGE'S
DECEMBER 8, 2020 DISCOVERY ORDER [ECF NO. 384]**

Pursuant to 28 U.S.C. § 636(b)(1)(A), Federal Rule of Civil Procedure 72(a) and (b), and Rule 4(a) and (b) of the Magistrate Judge Rules of the Southern District of Florida Local Rules, Respondent Juan Carlos Celestino Coderch Mitjans ("Mr. Coderch") timely objects to, and appeals, the Magistrate Judge's December 8, 2020 Discovery Order [ECF No. 384] granting EGI's motion for protective order [ECF No. 353] and denying Mr. Coderch's cross-motion to compel [ECF No. 362].

The Magistrate Judge's ruling denying discovery is based on two fundamental errors. First, the Magistrate Judge reasons that at this stage of the proceedings, following the Eleventh Circuit's vacatur of the original judgment and remand, Mr. Coderch supposedly may not raise a new defense under the Federal Arbitration Act ("FAA") that the arbitration award was procured by fraud and undue means, and violates public policy. Second, the Magistrate Judge found that a $750,000 settlement EGI reached with one of the parties jointly and severally liable with Mr.

1

Homer Bonner Jacobs Ortiz, P.A.
1200 Four Seasons Tower | 1441 Brickell Avenue | Miami Florida 33131
305 350 5100 | www.homerbonner.com

Coderch for the purchase obligation only impacts the purchase price in terms of the cash payment EGI received, and not in terms of the shares EGI specifically kept under the settlement. These are merits questions that go to key defenses Mr. Coderch has raised to EGI's pending motion for judgment, and they are ultimately for this Court to decide. Yet the Magistrate Judge decided them as a basis for granting EGI a protective order and for denying Mr. Coderch discovery. Under any standard, the Magistrate Judge's Order should be reversed.

With respect to the fraud and public policy defense, neither the law of the case doctrine nor the mandate rule bars Mr. Coderch from asserting it, as the defense was indisputably not raised in the appeal or addressed explicitly or implicitly in the Eleventh Circuit's decision. Nor could it have been. The defense is based on admissions of an agreement to assist EGI in the arbitration (and afterwards) by two parties, Richard and Alex Huber, who are jointly and severally liable along with Mr. Coderch under the arbitration award. In return for their assistance, EGI promised to reduce or eliminate the Hubers' liability. This is a classic "Mary Carter" agreement, banned in Florida and around the country as unlawful. EGI made sure Mr. Coderch would not find out about the agreement by postposing any action against the Hubers until after it had secured its judgment in this case, and after Mr. Coderch had appealed. Under established Eleventh Circuit law, Mr. Coderch may raise the defense now. The Magistrate Judge ruled to the contrary, finding without any discussion of the law of the case doctrine or the mandate rule that the only thing the Court may do is make the adjustments to the Judgment the Eleventh Circuit identified in its opinion.

With respect to the settlement, which EGI reached with the Hubers, the Eleventh Circuit has already ruled that the arbitration award requires a purchase and transfer of shares. In ruling that the only set-off available is the payment the Hubers made to EGI, and not the shares EGI

2

Homer Bonner Jacobs Ortiz, P.A.
1200 Four Seasons Tower | 1441 Brickell Avenue | Miami Florida 33131
305 350 5100 | www.homerbonner.com

retained, the Magistrate Judge is effectively giving EGI the same kind of windfall the Eleventh Circuit previously reversed.

On these bases the Magistrate Judge denied Mr. Coderch any discovery about the illegal agreement or the value of the shares. Because these rulings are contrary to the law of the Eleventh Circuit, this Court should reverse.

**I.   BACKGROUND**

**A.  The events before remand.**

A Chilean arbitration award made Richard and Alex Huber jointly and severally liable, alongside Mr. Coderch and several other parties, for the purchase of EGI's shares in a wine company. EGI filed this action in 2015 to confirm the award under Chapter 3 of the FAA, which adopts the Inter-American Convention on International Commercial Arbitration (the "Panama Convention"), S. Treaty Doc. No. 97-12, 1978 WL 219648 (June 9, 1978). This Court confirmed the award and entered a Final Judgment on June 4, 2018. Mr. Coderch appealed two weeks later.

A year passed. Then on June 28, 2019, EGI filed another petition to confirm the arbitration award, only against the Hubers in the Southern District of New York. The timing of this petition was no coincidence. The year interval exhausted the time period for Mr. Coderch to seek to vacate or set aside the judgment under several subsections of Rule 60 (notwithstanding the still-pending appeal). EGI knew what was coming from the Hubers.

On August 19, 2019, the Hubers filed affidavits in the New York proceeding publicly disclosing for the first time agreements they had with EGI to provide assistance to EGI during the arbitration, and then in collecting against Mr. Coderch afterwards, all while the Hubers remained parties against EGI in the arbitral proceedings. *See* ECF No. 362-1. In return, EGI agreed not to collect on the purchase price against the Hubers. This was a "Mary Carter"

3

agreement, which in many jurisdictions in the U.S. including Florida are banned as unlawful. *See Dosdourian v. Carsten*, 624 So. 2d 241, 243, 246 (Fla. 1993) (describing "a contract by which one co-defendant secretly agrees with the plaintiff that, if such defendant will proceed to defend himself in court, his own maximum liability will be diminished proportionately by increasing the liability of the other co-defendants"). EGI attempted to rely on a purported "tolling" agreement entered into after the arbitration with the Hubers, where they agreed to assist in the collection proceedings against Mr. Coderch in return for staying any petition to enforce the arbitration award. But EGI lost its New York petition on untimeliness grounds. *See EGI-VSR, LLC v. Huber*, 19 CIV. 6099 (ER), 2020 WL 1489790, at *13 (S.D.N.Y. Mar. 27, 2020), *appeal withdrawn*, 20-1306, 2020 WL 4197304 (2d Cir. June 11, 2020). EGI appealed to the Second Circuit, and the case settled, with the Hubers agreeing to pay EGI $750,000 by June 10, 2020.

On June 25, 2020, the Eleventh Circuit vacated the original Judgment in this case and remanded with instructions. *EGI-VSR, LLC v. Coderch Mitjans*, 963 F.3d 1112, 1125 (11th Cir. 2020). The Eleventh Circuit found this Court improperly converted the Award from one of specific performance to a money judgment and had miscalculated the purchase price. *Id*. at 1124. The Award had not specified a currency for the put price to be paid, but the Eleventh Circuit determined that the currency "does not matter so much…as long as the right conversion date is used." *Id*. The Award did not specify a conversion date either, but the Eleventh Circuit decided that the district court could apply U.S. law to determine that date. *Id*. at 1122-23. Applying the United States' "breach day" rule, the court of appeals decided the proper date of conversion was the day the award was issued and not the date payment was due, as EGI erroneously proposed. *Id*. The Eleventh Circuit therefore vacated the judgment with instructions to the district court to

4

re-calculate the put right price using the date of the Award as the conversion date, and to enter a judgment of specific performance. *Id.* at 1125.

### B. Mr. Coderch raises a new defense and serves discovery.

After remand, and in the renewed pre-judgment procedural posture, Mr. Coderch asked for an extension of time to respond to EGI's motion for judgment to be able to take discovery on EGI's secret agreements with the Hubers. ECF No. 343 at 1 (requesting a "30-day extension to respond to the motion *to allow him to take the discovery* and respond to the many issues EGI's motion raises") (emphasis added). This Court granted the motion, ECF No. 344, and Mr. Coderch served the discovery. The discovery aimed to uncover facts about EGI's undisclosed agreement with the Hubers to influence the arbitration and the June 2020 Settlement Agreement of the New York proceedings. In a First Request for Production, Mr. Coderch asked for the following documents:

1. All Agreements entered into with one or more defendants in connection with the case styled *EGI-VSR, LLC v. Richard Leslie Huber, et al.*, Case No. 19-CIVIL-6099, before the U.S. District Court in the Southern District of New York, or with the related appeal, *EGI-VSR, LLC v. Richard Leslie Huber, et al.*, Case No. 20-1306, before the U.S. Court of Appeals for the Second Circuit.

2. All documents showing any payments, or other consideration, you have received or may receive in the future as full or partial payment of the Arbitral Award.

3. All documents or communications constituting or referring to any Agreement, or draft of any Agreement, 1) between you and any, some, or all of the following: Richard Huber, or Alex Huber, or any company(ies) owned or controlled by either of them; and 2) concerning,
    a. the Arbitration;
    b. the Arbitral Award;
    c. confirmation of the Arbitral Award;
    d. any attempt to collect on or enforce the Arbitral Award;
    e. the presentation of evidence or testimony, or both, during the Arbitration;
    f. the attempt by the arbitrator to continue proceedings in the Arbitration, after the entry of the Arbitral Award;
    g. VSR; and/or

5

HomeR BonneR Jacobs Ortiz, P.A.
1200 Four Seasons Tower | 1441 Brickell Avenue | Miami Florida 33131
305 350 5100 | www.homerbonner.com

    h. the Shareholders Agreement, and any remedies or actions available under the Shareholders Agreement, including but not limited to the Put Right.

4. All communications by or between you, Richard Huber, and/or Alex Huber referring or relating to the Arbitration and/or Arbitral Award.

5. All documents and communications evidencing or referring to ways, either directly or indirectly, that Richard Huber or Alex Huber, or both, supported EGI's claims in the Arbitration.

6. All documents and/or communications evidencing or referring to ways Richard Huber or Alex Huber, or both, assisted EGI in its efforts to collect on the Arbitral Award.

7. All documents and/or communications which support or refute the averments made by Richard Huber and Alex Huber in their Declarations that EGI considered them "allies" and that "it had no plans to enforce the Put Right against" them, even though it named them in the Arbitration.

8. All documents and/or communications referring or relating to any efforts to collect on the Arbitral Award from any individual or company besides Mr. Coderch, his family, or any company you allege is controlled by Mr. Coderch.

9. All Agreements entered into between you and any company or individual that is or may be liable, either directly or indirectly, for the Arbitral Award, besides Mr. Coderch.

10. Any and all documents and/or communications relating to either or both of the following websites: • www.juancoderch.com • espinosayasociados.com. This request for documents and/or communications includes but is not limited to : a) the web servers hosting the websites; b) the entities operating such web servers; c) payments made for the maintenance of the website(s); d) the creation of the website(s); e) content input and/or output; or f) the operation and maintenance of the website(s).

11. All documents or communications relating to any meeting by Alex Huber or Richard Huber with the Arbitrator, including but not limited to meeting minutes, acts, memos, or correspondence discussing such meetings. This request excludes privileged communications.

ECF No. 384 at 4-6.

    EGI objected and moved for a protective order. ECF No. 353. EGI argued the Eleventh Circuit's mandate supposedly eliminated Mr. Coderch's ability to raise the Huber-related defenses. EGI also denied that it had any agreement with the Hubers to influence the arbitration,

6

called it a "baseless contention," and insisted its written "Standstill" or "tolling" agreement was not "fraud" or "illegal." ECF No. 353 n.1. EGI also claimed, without providing any evidence, that Mr. Coderch knew about the agreements at the time of the arbitration in 2012. EGI partially relented on its refusal to produce any discovery with respect to the settlement, producing the Settlement Agreement, pursuant to a Confidentiality Order (as agreed to by the parties), and evidence of payment.

Mr. Coderch cross-moved to compel on the First Request for production. He asserted that he had every right to raise the new defense notwithstanding the Eleventh Circuit's remand under the Eleventh Circuit's law of the case doctrine and mandate rule. Also, in light of EGI's production of the Settlement Agreement and its vague contentions about the arbitration, Mr. Coderch served a Second Request for Production and Interrogatories, asking for the following:

1. All documents which contain or constitute the allegedly defamatory statement(s) referenced in the Settlement Agreement, specifically in the eighth WHEREAS clause, on the top of page 2 of the Settlement Agreement.

2. All documents showing or proving that Mr. Coderch was aware of the Huber Agreement prior to June 18, 2018.

3. All documents that support your contention that Mr. Coderch raised arguments referring or relating to the Huber Agreement during the Arbitration.

4. All documents showing any attempts by EGI to collect on its Settlement Agreement with Alex Huber and Richard Huber.

*   *   *

1. Identify all persons who had knowledge of the Huber Agreement before June 18, 2018.

2. Do you contend that Mr. Coderch had actual knowledge of the Huber Agreement during the Arbitration? If so, describe in detail all facts and circumstances supporting your contention.

    3. Do you contend that the Huber Agreement was raised as a defense in the Arbitration? If so, describe in detail all facts and circumstances supporting your contention including how the defense was raised, who raised the defense, and when.

ECF No. 384 at 7.

While the discovery motions were pending, Mr. Coderch timely responded to EGI's motion for a new judgment, raising the defenses he previously noticed. He maintains the undisclosed Mary Carter agreements EGI and the Hubers reached and performed before, during, and after the arbitration were tantamount to fraud and are illegal and void. *E.g.*, *Dosdourian*, 624 So. 2d at 246 (holding Mary Carter Agreements "present to the jury a sham of adversity…. We are convinced that the only effective way to eliminate the sinister influence of Mary Carter agreements is to outlaw their use."). Mr. Coderch therefore asserts a defense to EGI's petition under express provisions of the FAA and Panama Convention that disallow confirmation where the arbitral award resulted from undue means or fraud, and where the award violates the public policy of the state. *See* S. Treaty Doc. No. 97-12, 1978 WL 219648 (June 9, 1978). *See* Panama Conv. Art. V(2)(b) (stating "[t]he recognition and execution of an arbitral decision may also be refused if the competent authority of the State in which the recognition and execution is requested finds:…That the recognition or execution of the decision would be contrary to the public policy ('ordre public') of that State."); 9 U.S.C. § 9 (providing for confirmation "unless the award is vacated, modified, or corrected as prescribed in sections 10 and 11 of this title"); § 10(a)(1) (providing a district court "may make an order vacating the award upon the application of any party to the arbitration … where the award was procured by corruption, fraud, or undue means"); 9 U.S.C. § 307 ("Chapter 1 applies to actions and proceedings brought under this chapter to the extent chapter 1 is not in conflict with this chapter or the Inter-American Convention as ratified by the United States.").

8

Homer Bonner Jacobs Ortiz, P.A.
1200 Four Seasons Tower | 1441 Brickell Avenue | Miami Florida 33131
305 350 5100 | www.homerbonner.com

Mr. Coderch also asserts that the Hubers' settlement with EGI impacts the amount of the purchase price, a fact EGI has all but admitted in agreeing to a $750,000 reduction off the purchase price. ECF No. 353, p. 4. Mr. Coderch maintains merely crediting the dollar amount of the settlement to the purchase price does not account for the full value of the settlement since EGI got to keep the shares as well. Mr. Coderch must know the market value of the shares to determine the correct adjustment to the purchase price, and to the number of shares he must purchase. He argued he should be entitled to discovery to determine that.

After a hearing on the discovery motions, the Magistrate Judge granted EGI's motion for a protective order and denied Mr. Coderch's cross-motion to compel. ECF No. 384. The Magistrate Judge reasoned that after the Eleventh Circuit's Mandate, this Court's only remaining task is to "conduct[] a mathematical calculation utilizing a prescribed formula to compute a purchase price per share and tendering of the shares." *Id*. at 8. As a result, the Magistrate Judge concluded that all the discovery Mr. Coderch sought—aside from EGI's Settlement Agreement with the Hubers—is irrelevant and outside the scope of discovery under Fed. R. Civ. P. 26(b)(1). *Id*. The Magistrate Judge further ruled that the only discovery Mr. Coderch is entitled to on the settlement has already been produced, the agreement and evidence of payment. The Magistrate Judge reasoned the settlement could not affect the purchase price any more than the $750,000 discount because EGI transferred no shares. *Id*. The Magistrate Judge therefore granted EGI's motion for protective order, denied Mr. Coderch's motion to compel, and extended her ruling to the additional discovery sought by Mr. Coderch is his second request for production and interrogatories, although they were not part of any written motion.[1] *Id*. at 9.

---

[1] Mr. Coderch was preparing to file a timely motion to compel on the Second Requests when the Magistrate Judge's Order issued, mooting the motion.

9

Homer Bonner Jacobs Ortiz, P.A.
1200 Four Seasons Tower | 1441 Brickell Avenue | Miami Florida 33131
305 350 5100 | www.homerbonner.com

## II. MEMORANDUM OF LAW

### A. The Magistrate Judge's merits rulings were improper, and this Court should review them de novo.

Federal Rule of Civil Procedure 72(a) provides that, when timely objections are made to a Magistrate Judge's order on a nondispositive matter, "[t]he district judge to whom the case is assigned shall consider such objections and shall modify or set aside any portion of the magistrate judge's order found to be clearly erroneous or contrary to law." *Id*. (emphasis added); *see also* 28 U.S.C. § 636(b)(1)(A) (reciting same standard); *In re Commissioner's Subpoenas*, 325 F.3d 1287, 1292 n. 2 (11th Cir. 2003) (observing that district court properly applied "clearly erroneous or contrary to law" standard of review in reconsidering Magistrate Judge's determination of pretrial matter); S.D. Fla. L.R. Mag. 4(a)(1) (same). An order is "contrary to law" when the Magistrate Judge's legal conclusions "fail[] to apply or misappl[y] relevant statutes, case law, or rules of procedure." *Rodriguez v. Pan Am. Health Org.*, No. 18-CV-24995, 2020 WL 1666757, at *2 (S.D. Fla. Apr. 3, 2020) (citation omitted). The "clearly erroneous" standard applies to a Magistrate Judge's factual findings but not to erroneous legal standards. *Id.* Further, "the District Judge may also reconsider sua sponte any matter determined by a Magistrate Judge under this rule." S.D. Fla. L.R. Mag. 4(a)(1).

To be sure, the Magistrate Judge decided the pending non-dispositive discovery motions. The Order in this case contains more than non-dispositive rulings, however. Mr. Coderch's fraud and public policy argument, including the threshold question of his ability to raise it, and the value of the Huber settlement, are major defenses Mr. Coderch has raised in his reponse to the motion for judgment that ultimately must be decided by this Court. (This Court asked the Magistrate Judge for a Report and Recommendation on EGI's motion for judgment. ECF No. 355.) That the Magistrate Judge undertook apparently to prejudge the merits of those defenses on

10

a discovery motion is objectionable, and arguably grounds in itself for reversal. *See Deford v. Schmid Products Co., a Div. of Schmid Labs., Inc.*, 120 F.R.D. 648, 654 (D. Md. 1987) (denying a protective order on finding the plaintiff's case "is not patently frivolous, and it is not appropriate for this court to prejudge the ultimate merits of the Defords' claim."); *cf. Wilmington Tr. Co. v. Boeing Co.*, C20-0402-RSM-MAT, 2020 WL 6060434, at *2 (W.D. Wash. Oct. 14, 2020) (denying a stay of discovery given that "[a] thorough analysis of the parties' arguments in relation to the motion to dismiss is necessary, as well as a determination by the assigned district judge following consideration of a report and recommendation," and noting "[T]aking a 'preliminary peek' and evaluating a pending dispositive motion puts a magistrate judge in an awkward position. The district judge will decide the dispositive motion and may have a different view of the merits of the underlying motion."). The Magistrate Judge went beyond merely taking a "peek" at contested merits issues. The Magistrate Judge all but decided them. That was error.

It is also grounds for de novo review. There is no denying the Order has a dispositive impact on the two defenses Mr. Coderch's discovery sought. In that case, this Court should conduct a de novo review the Magistrate Judge's rulings pursuant to Federal Rule of Civil Procedure 72(b) and Local Magistrate Judge Rule 4(b) on two underlying issues—whether Mr. Coderch can raise the fraud and public policy defense under the FAA and Panama Convention, and whether the value of the un-transferred shares factors into Mr. Coderch's purchase obligation under the Put Right. *See Jeffrey S. by Ernest S. v. State Bd. of Educ. of State of Ga.*, 896 F.2d 507, 512 (11th Cir. 1990) (discussing the intent of requiring de novo review of a magistrate's report and recommendations under 28 U.S.C. § 636(b)(1), "that the district judge in making the ultimate determination of the matter, would have to give fresh consideration to those issues to which specific objection has been made by a party," and stating "[t]he de novo review

11

Homer Bonner Jacobs Ortiz, P.A.
1200 Four Seasons Tower | 1441 Brickell Avenue | Miami Florida 33131
305 350 5100 | www.homerbonner.com

requirement is essential to the constitutionality of section 636") (citing H.R. Rep. No. 94–1609, 94th Cong., 2nd Sess., reprinted in 1976 U.S. Code Cong. & Admin. News 6162, 6163.).

### B. The Order protecting EGI from any discovery and denying Mr. Coderch's motion to compel should be reversed.

Rule 26(c) provides that, "[u]pon motion by a party or by the person from whom discovery is sought" and upon a showing of good cause, a court "may make any order which justice requires to protect a party or person from annoyance, embarrassment, oppression, or undue burden or expense," including an order limiting the scope of discovery to certain matters. Fed. R. Civ. P. 26(c). The movant, in this case EGI, "bears the burden of demonstrating good cause for entry of a protective order." *E.g. Mazur v. Lampert*, 04-61159-CIV, 2006 WL 8431627, at *2 (S.D. Fla. May 23, 2006) (citation omitted). A showing of good cause required EGI to "demonstrate that the basis for a protective order falls within one of the categories enumerated in the rule." *Id*.

The case law is clear that Mr. Coderch is entitled to discovery to prove the grounds for vacating the arbitration award under the FAA and contest EGI's inflated calculations of the purchase price. *See, e.g., Frere v. Orthofix, Inc.*, 00CIV.1968(RMB)(MHD), 2000 WL 1789641, at *4 (S.D.N.Y. Dec. 6, 2000) (finding "discovery in a post-arbitration judicial proceeding to confirm or vacate is governed by the Federal Rules of Civil Procedure," and is available "where relevant and necessary to the determination of an issue raised by such an application," and collecting cases). Mr. Coderch's discovery was specifically aimed at these two relevant matters. The Magistrate Judge did not rule otherwise or make any findings about the specific requests. Nor did the Magistrate Judge's protective order make any specific finding of "annoyance, embarrassment, oppression, or undue burden or expense." The Order relied entirely on two findings—that the Eleventh Circuit's decision prohibited any other defense other than the errors

discussed in the decision, and that the only relevant and discoverable fact related to the settlement with the Hubers was the $750,000 settlement payment. The Magistrate Judge found that these same underlying findings made Mr. Coderch's discovery irrelevant and disproportionate to the needs of the case. Both underlying rulings are contrary to controlling Eleventh Circuit law. The ruling as to the settlement amount is also clearly erroneous under the facts. Accordingly, the Order should be reversed.

### 1. The Magistrate Judge's ruling is contrary to the Eleventh Circuit's law of the case doctrine and the related mandate rule.

The law of the case doctrine holds that "the findings of fact and conclusions of law by an appellate court are generally binding in all subsequent proceedings in the same case in the trial court or on a later appeal." *E.g., Transamerica Leasing, Inc. v. Inst. of London Underwriters*, 430 F.3d 1326, 1331 (11th Cir. 2005). The doctrine encompasses "things *decided by necessary implication* as well as those decided explicitly." *Id*. (emphasis in original). The mandate rule "is nothing more than a specific application of the 'law of the case' doctrine," mandating that a district court, "upon receiving the mandate of an appellate court, may not alter, amend, or examine the mandate, or give any further relief or review, but must enter an order in strict compliance with the mandate." *See id*. (citing *Piambino v. Bailey,* 757 F.2d 1112, 1120 (11th Cir. 1985)).

The law of the case doctrine "is not an inexorable command," however, but "a salutary rule of practice designed to bring an end to litigation,… discourage 'panel shopping,'… and ensure the obedience of lower courts." *Guevara v. Republic of Peru*, 608 F.3d 1297, 1306–07 (11th Cir. 2010); *Luckey v. Miller*, 929 F.2d 618, 621 (11th Cir. 1991. The mandate rule and law of the case doctrine apply to "*only* those issues previously determined," and "do[] *not* extend to issues the appellate court did not address." *Id*. at 1307 (emphasis added). A district court

therefore is "free to address, as a matter of first impression, those issues not disposed of on appeal." *See Transamerica*, 430 F.3d at 1331 (citation omitted).

The Eleventh Circuit has underscored, "[o]ur case law *could not be clearer* that the law of the case doctrine cannot apply when the issue in question was outside the scope of the prior appeal." *Id*. at 1332 (emphasis added) (citing *Quern v. Jordan,* 440 U.S. 332, 347 n. 18 (1979) (noting that law of the case "comes into play only with respect to *issues* previously determined") (emphasis added); *Lawson v. Singletary,* 85 F.3d 502, 512–13 (11th Cir. 1996) (noting that the law of the case doctrine did not apply, in part, because the issue at hand—whether a particular prison regulation comported with a federal statute—was not briefed or argued in the prior appeal); *Ne. Fla. Chapter of the Associated Gen. Contractors of Am. v. City of Jacksonville,* 951 F.2d 1217, 1218 n. 1 (11th Cir. 1992) (noting that the panel was not prohibited by the law of the case doctrine from dismissing a case based on lack of standing where the prior appellate panel had not considered the standing question), *rev'd on other grounds,* 508 U.S. 656 (1993); *Gaines v. Dougherty County Bd. of Educ.,* 775 F.2d 1565, 1568–69 (11th Cir. 1985) (noting that prior appellate decisions, which discussed only the merits of several desegregation plans, did not prevent the court from later addressing prior rulings regarding attorneys' fees); *Conway v. Chem. Leaman Tank Lines, Inc.,* 644 F.2d 1059, 1062 (5th Cir. 1981) (affirming the trial court's grant of a new trial on grounds that, at the time of prior appeals, had not yet been considered by the district court, and therefore were not ruled upon by prior appellate panels)).

The Eleventh Circuit has recognized that even in cases finding "an *implicit* holding, the issue in question was considered in the prior appeal." *See Transamerica*, 430 F.3d at 1333 (citing cases). Moreover, in cases where the issue was considered on appeal and the law of the case doctrine clearly does apply, the Eleventh Circuit recognizes exceptions, "where: (1) substantially

14

Homer Bonner Jacobs Ortiz, P.A.
1200 Four Seasons Tower | 1441 Brickell Avenue | Miami Florida 33131
305 350 5100 | www.homerbonner.com

different evidence is produced at a subsequent trial; (2) controlling authority compels a contrary decision of law applicable to the issue; or (3) the prior decision was clearly erroneous and would work manifest injustice." *E.g., Dorsey v. Cont'l Cas. Co.,* 730 F.2d 675, 678 n.2 (11th Cir. 1984).

      Under these principles, the Magistrate Judge's ruling that the Court is constrained by the Eleventh Circuit's mandate to consider only the errors addressed in the opinion and not Mr. Coderch's Huber-related defenses is contrary to the law. Neither the law of the case doctrine nor the mandate rule prohibits Mr. Coderch's Huber-related defenses or the relevant discovery needed to prove them. It is undisputed that the Eleventh Circuit did not consider the secret agreements EGI had with the Hubers as a potential basis for vacating the award or the eventual settlement EGI reached with them—nor could it possibly have done so. The 2018 declarations that disclosed the secret agreements long post-dated the original judgment and Mr. Coderch's appeal. They were not part of the record before the district court at the time of the first judgment and could not have been raised on appeal. While the Eleventh Circuit did rule that this Court properly confirmed the award, the sole issue addressed there was the finality of the award, and whether disputes over the calculation of the purchase price must be arbitrated or decided by this Court. *EGI-VSR*, 963 F.3d at 1122. Those decisions had nothing whatsoever to do with the Hubers' secret agreement with EGI or with Mr. Coderch's argument here under the FAA and Panama Convention, that fraud, undue means, and public policy require vacatur of the arbitration award. Nor did the Eleventh Circuit consider the impact of the settlement with the Hubers as part of the errors in the calculation of the purchase price, as the settlement did not exist. The law of the case doctrine and mandate rule therefore do not apply.

15

HomeR BonneR Jacobs Ortiz, P.A.
1200 Four Seasons Tower | 1441 Brickell Avenue | Miami Florida 33131
305 350 5100 | www.homerbonner.com

### 2. Even if the law of the case doctrine did apply, an exception exists to allow the defense and, therefore, the discovery.

The exception for "substantially different evidence … produced at a subsequent trial" would control in any case. Mr. Coderch is seeking that very evidence in this response and cross-motion. *Dorsey,* 730 F.2d at 678 n.2. What evidence he has already of EGI's secret agreements with the Hubers and their settlement is completely different from the evidence presented originally to EGI's petition, dealing with service issues, disputes over calculations, and finality arguments. The Huber agreements and settlement raise wholly different grounds against confirming the award under the FAA and against EGI's calculation of the purchase price.

EGI insists Mr. Coderch knew of its secret agreements with the Hubers. But there is already substantial evidence to refute EGI's contention, which is based on mischaracterizations of the Arbitration Award. *See* ECF No. 383. Mr. Coderch had no way of knowing about EGI's unlawful agreements with the Hubers until they were disclosed for the first time in 2018. *See id*. The later settlement did not exist until this year.

In any event, Mr. Coderch's knowledge of the Huber agreements has no bearing on the law of the case doctrine. As the Eleventh Circuit has explained, the "doctrine is not as rigid as res judicata, however, and does not bar consideration of matters that could have been, but were not, resolved in earlier proceedings." *Luckey*, 929 F.2d at 621 (citing *Litman v. Massachusetts Mut. Life Ins. Co.,* 825 F.2d 1506, 1511 (11th Cir. 1987). The only question is whether the Eleventh Circuit explicitly or implicitly addressed the secret agreements and settlement, and the answer is no. To the extent EGI intends to make a waiver argument, that was no basis for a protective order. Such an argument, attempting to dispute Mr. Coderch's stated lack of knowledge, invites discovery, it does not foreclose it.

16

Homer Bonner Jacobs Ortiz, P.A.
1200 Four Seasons Tower | 1441 Brickell Avenue | Miami Florida 33131
305 350 5100 | www.homerbonner.com

The Magistrate Judge addressed none of this authority. The finding that the Eleventh Circuit's mandate automatically bars any discovery is therefore contrary to the law.

### 3. The Order limiting discovery on the settlement is contrary to the Eleventh Circuit's ruling in this case.

The Magistrate Judge's Order improperly limits Mr. Coderch's discovery on EGI's Settlement Agreement with the Hubers to the agreement itself and proof of the $750,000 settlement payment. This improperly excludes discovery needed on the full value of the Settlement Agreement, which also included a release of the Hubers' entitlement to EGI's shares in VSR. *See* ECF No. at Ex. B, II. D.  Yet the Magistrate found "the number of EGI's shares was not impacted by the Confidential Settlement Agreement because none of EGI's shares were transferred back to the Hubers." ECF No. 384 at p. 8. This ignores the Eleventh Circuit's opinion, which reversed the original judgment on exactly this issue. The Eleventh Circuit held,

> Mr. Coderch is correct that the Arbitration Award is properly understood as ordering specific performance of the parties' obligations under Section 10—namely, the purchase by Mr. Coderch and the sale by EGI of EGI's shares of preferred stock. As the arbitrator noted throughout the Award, EGI had sought forcible compliance with the terms of the Shareholders' Agreement. And Section 10 of the Shareholders' Agreement makes clear that the parties contemplated the simultaneous transfer of stock for cash by providing that "*[a]t the time of each one of such purchases* [of preferred stock made pursuant to the Put Right], the respective number of relevant shares of Preferred Stock *shall be transferred* to the Put Buyer against full payment in cash for such shares" (emphases added). That simultaneous exchange of shares for money is what the arbitrator ordered.

*EGI-VSR, LLC*, 963 F.3d at 1124 (emphasis in original). The original judgment incorrectly failed to account for the Award's requirement that EGI transfer the shares to the Put Buyer in exchange for the payment.  Similarly, the Magistrate's Order ignores the Settlement Agreement's effect on the purchase. The Settlement Agreement required the Hubers to pay $750,000. But there was an additional benefit to EGI—as a result of a release included in the Settlement Agreement, EGI

17

was allowed to retain the shares that the Award ordered "*shall be transferred* to the Put Buyer," in that case the Hubers. *See* ECF No. 375 at Ex. B, II. D. That EGI successfully negotiated with the Hubers to keep the shares cannot prejudice Mr. Coderch. Merely discounting the $750,000 payment without *also* accounting for the value of the shares and deducting them from the total Mr. Coderch is required to buy would result in overpayment. The fair market value of those shares must be determined and deducted from any judgment. Otherwise, as with the prior judgment, EGI would reap a windfall. Mr. Coderch should be permitted to obtain discovery on the value of the shares the Hubers released to EGI as a result of the Settlement Agreement to assess the full value of the settlement. The Magistrate's Order otherwise is clearly erroneous and contrary to *EGI-VSR, LLC*, 963 F.3d at 1124.

This is a major issue that should have been decided not on a discovery motion but after an evidentiary hearing (which Mr. Coderch has specifically asked for), after all the evidence has been presented. That the Magistrate Judge decided it on a discovery motion, and contrary to the law of this case, is grounds for reversal.

### C. The Magistrate Judge did not rule on EGI's specific objections.

Because the Magistrate Judge preemptively, and against the law of the Eleventh Circuit, barred any discovery, there is no ruling on any particular objections. Mr. Coderch respectfully requests that the Court compel production on each of the requests, the objections and responses to which are incorporated herein from ECF No. 362 at 11-20. Alternatively, Mr. Coderch requests that this Court remand the particular objections to the Magistrate Judge for a ruling.

### III. Conclusion

This Court should reverse the Magistrate Judge's Order granting a protective order barring Mr. Coderch's discovery and denying Mr. Coderch's motion to compel the discovery.

18

HomeR BonneR Jacobs Ortiz, P.A.
1200 Four Seasons Tower | 1441 Brickell Avenue | Miami Florida 33131
305 350 5100 | www.homerbonner.com

Mr. Coderch requests that the Court further compel responses to the discovery or remand the matter to the Magistrate Judge for particular rulings on the objections.

**REQUEST FOR HEARING**

Pursuant to Local Rule 7.1(b), Mr. Coderch respectfully requests a 30-minute hearing. A hearing is desired and would be helpful to the Court to understand the complexity of the case's background and to understand the necessity of the discovery requests.

Date: December 22, 2020

                                      Respectfully submitted:



                                      Attorneys for Respondent
                                      1200 Four Seasons Tower
                                      1441 Brickell Avenue
                                      Miami Florida 33131
                                      Phone: (305) 350-5192
                                      Fax: (305) 372 2738

By:   */s/ Christopher J. King*
        Christopher J. King, Esq.
        Email: cking@homerbonner.com
        Florida Bar No.: 123919
        Kevin P. Jacobs
        Email: kjacobs@homerbonner.com
        Florida Bar No. 169821
        Rayda Alemán
        Email: raleman@homerbonner.com
        Florida Bar No. 0017386

19

HomeR BonneR Jacobs Ortiz, P.A.
1200 Four Seasons Tower | 1441 Brickell Avenue | Miami Florida 33131
305 350 5100 | www.homerbonner.com