UNITED STATES DISTRICT COURT
SOUTHERN DISTRICT OF FLORIDA

Case No. 15-20098-CIV-SCOLA/OTAZO-REYES

EGI-VSR, LLC,

    Plaintiff,

v.

JUAN CARLOS CELESTINO
CODERCH MITJANS a/k/a JUAN CODERCH,

    Defendant.
_____/

**REPORT AND RECOMMENDATION**

THIS CAUSE came before the Court upon Plaintiff EGI-VSR, LLC's ("Plaintiff" or "EGI") Motion for Entry of Amended Judgment Upon Issuance of the Mandate (hereafter, "Motion for Amended Judgment") [D.E. 341]. This matter was referred to the undersigned pursuant to 28 U.S.C. § 636 by the Honorable Robert N. Scola, Jr., United States District Judge [D.E. 355]. The undersigned held a hearing on this matter on February 3, 2021 (hereafter, "Hearing") [D.E. 376]. For the reasons stated below, the undersigned respectfully recommends that the Motion for Amended Judgment be GRANTED IN PART.

**PROCEDURAL AND FACTUAL BACKGROUND**

EGI commenced this action on January 12, 2015, with the filing of a Petition to Confirm International Arbitral Award (hereafter, "Petition") [D.E. 1]. The Arbitration Award that EGI sought to confirm related to a shareholder agreement involving stock in a private company, Viña San Rafael S.A. ("VSR"), engaged in the production and distribution of wine (hereafter, "VSR Shareholders' Agreement"). Id. at 3–4. In the arbitration proceedings, which took place in Chile, EGI prevailed on its claim that the VSR Shareholders' Agreement had been breached by Coderch

and various Non-Parties, including Richard Leslie Huber and Alexander Leslie Huber (together, the "Hubers"). See Arbitration Award, dated January 13, 2012 [D.E. 1-5 at 102]. As a result, the Arbitration Award required Coderch and the Non-Parties, jointly and severally, to buy back all of EGI's shares in VSR at a purchase price to be computed in accordance with the methodology articulated in Section 10 of the VSR Shareholders' Agreement. See Arbitration Award [D.E. 1-5 at 103–04].[1]

In its Petition, EGI sought confirmation of the Arbitration Award and a money judgment in the amount computed pursuant to the prescribed methodology, plus post-award interest, plus attorneys' fees and costs. See Petition [D.E. 1 at 10]. On June 4, 2018, the Court entered Final Judgment in favor of EGI and against Coderch in the amount of $28,700,450.07, plus post-judgment interest [D.E. 43]. On June 18, 2018, Coderch appealed the Final Judgment [D.E. 44].

On June 28, 2019, EGI filed a Petition to Recognize and Enforce Foreign Arbitral Award Under the Panama Convention against the Hubers in the District Court for the Southern District of New York ("SDNY") (hereafter, "Huber Petition"). See Huber Petition [D.E. 1, SDNY Case No. 19-cv-06099-ER]. On March 27, 2020, the Huber Petition was dismissed as time-barred, pursuant to the Federal Arbitration Act's three-year statute of limitations period for Panama Convention enforcement claims. See Opinion & Order [D.E. 37, SDNY Case No. 19-cv-06099-ER].

On May 29, 2020, while Coderch's appeal from the Court's Final Judgment was still pending, EGI and the Hubers entered into a Confidential Agreement and Covenant Not to Sue (hereafter, "Huber Settlement") [D.E. 375-1, sealed]. According to EGI, the Hubers agreed to pay EGI $750,000 in exchange for the resolution of EGI's claims against them and further agreed that none of EGI's shares in VSR would be transferred back to the Hubers. See EGI's Reply in Support

---

[1] This buy back provision in the VSR Shareholders' Agreement is referred to as the "Put Right." See Arbitration Award [D.E. 1-5 at 12].

of Motion for Protective Order and Response to Coderch's Cross-Motion to Compel [D.E. 368 at 6 n.6].

On August 7, 2020, the Eleventh Circuit Court of Appeals issued its Mandate, finding that "the District Court properly found that the Arbitration Award should be confirmed under the Panama Convention"; but vacating the Final Judgment and remanding the matter with instructions "to recalculate the purchase price of [EGI's] shares using the January 13, 2012, conversion date" and to "enter an order requiring both Mr. Coderch and EGI to perform their obligations under Section 10 of the [VSR] Shareholders' Agreement by paying the purchase price for the relevant shares, after proper calculation and conversion, and tendering those shares, respectively." See Mandate [D.E. 340 at 26–27].

On the same day that the Mandate issued, EGI filed the Motion for Amended Judgment [D.E. 341]. Therein, EGI recalculated the purchase price of EGI's shares in VSR using the January 13, 2012 conversion date pursuant to the Mandate. See Ex. E. to Motion for Amended Judgment [D.E. 341-6]. EGI's recalculations yield a purchase price of $28,051,296.33 for EGI's shares in VSR. Id. at 4. EGI subsequently adjusted this figure to $27,301,296.33 by deducting the $750,000 Huber Settlement payment. See Reply in Support of the Motion for Amended Judgment (hereafter, "Reply") [D.E. 377 at 2, 7].

On October 23, 2020, Coderch filed his Response in Opposition to the Motion for Amended Judgment and Request for Evidentiary Hearing (hereafter, "Response") [D.E. 371]. Therein, Coderch challenged EGI's calculation of the purchase price for its VSR shares and argued that the Huber Settlement further impacts the Amended Judgment to be entered pursuant to the Mandate. Id. at 9–17, 21–22. At the February 3rd Hearing, the parties presented their arguments

regarding these issues, as well as EGI's proposed Amended Judgment, all of which are addressed below.

## DISCUSSION

A. Calculations of the purchase price of EGI's shares in VSR.

The Motion for Amended Judgment provides a detailed breakdown of the calculations EGI used to arrive at the purchase price of $28,051,296.33 for its shares in VSR. See Ex. E to the Motion for Amended Judgment [D.E. 34-6]. These are the same calculations EGI used to arrive at the original purchase price reviewed by the Eleventh Circuit, except for a change in the conversion date to January 13, 2012, as required by the Mandate. Id.; Ex. G to EGI's Memorandum in Opposition to Respondent's Motion to Quash and Motion to Dismiss [D.E. 30-7 at 4–14]; see also Transcript of February 3, 2021 Hearing (hereafter, "Transcript") [D.E. 400 at 8:9–9:5, 18:14–19:20].

Coderch had challenged the calculations used to arrive at the purchase price of EGI's shares in his appeal of the Court's Final Judgment. See Ex. B. to EGI's Reply [D.E. 377 at 33–39]; Mandate [D.E. 340 at 19]. Notwithstanding that challenge, the only adjustment required by the Eleventh Circuit's Mandate was to change the conversion date to January 13, 2012. See Mandate [D.E. 340 at 26–27]. Accordingly, there is no basis for Coderch's renewed challenge to EGI's calculations of the purchase price for its VSR shares.

Therefore, the undersigned adopts EGI's calculations underlying the total purchase price of $28,051,296.33, as shown in Ex. E. to the Motion for Amended Judgment [D.E. 34-6], and incorporates those calculations by reference herein.

B. Effect of the Huber Settlement

In his Response, Coderch argues for a reduced Amended Judgment to reflect the value of

the Huber Settlement; and for denial of confirmation based on the Huber Settlement. See Response [D.E. 371 at 9-17]. With regard to the latter, Coderch contends that "issues with the Hubers give [him] a new defense to confirmation." Id. at 9.

1. The value of the Huber Settlement.

Coderch argues that both the $750,000 Huber Settlement payment and the value of EGI's shares in VSR that are somehow attributable to the Hubers must be deducted from the total purchase price. Id. at 16.

As noted above, EGI has agreed to reduce the purchase price to reflect the full amount of the Huber Settlement payment, resulting in an adjusted purchase price of $27,301,296.33 for EGI's shares in VSR. See Reply [D.E. 377 at 2, 7].

With respect to the value of EGI's shares in VSR, Coderch argued at the Hearing that the amount of shares that he is required to purchase from EGI should be reduced by 24.36%, the percentage of VSR shares that the Hubers owned. See Transcript [D.E. 400 at 23:2-9]. Coderch's counsel explained his argument at the Hearing as follows:

> Yes. So look, the $750,000 was a cash payment, but as part of the settlement, they have released any claim to recover the shares and we think it is not fair [not] to make an adjustment for the value of those shares. Those shares are not completely without value.
> ***
> So the Hubers' share in VSR, as Mr. Vail was correct in correcting me, was 24.36 percent. The assumption here is that what the Hubers would have bought back if as controlling shareholders they had complied with their obligation under the put right, would have been that same amount. They would have bought back 24.36 percent of the shares had they complied with the shareholder's agreement. They didn't and that is why we had the arbitration and that is why the guarantor, Mr. Coderch, is now responsible. But if the Hubers had released those shares, the amounts that they should be deemed to have released would be the same amount that they would have purchased, which is their percentage interest, 24.36 percent interest.
> ***
> Because the whole premise of the put right was that the controlling shareholders

5

>were going to buy EGI shares. And so if the Hubers were going to buy those shares, it would have been in the same amount that they owned of their percentage ownership. Just like if the other controlling shareholders would have bought the other 75 percent. So the Hubers would have purchased 24.36 percent of EGI shares under the put right.

Transcript [D.E. 400 at 51:3–7, 53:21–54:8, 59:19–60:1]; see also Expert Report of Brian Dies (hereafter, "Dies Report") [D.E. 393, 393-1 at 19] (adjusting the purchase price for EGI's shares in VSR by this 24.36% reduction); Supplemental Expert Report of Brian Dies (hereafter, "Supplemental Dies Report") [D.E. 395, 395-1 at 2] (applying the Hubers' 24.36% ownership interest in VSR to the 7,544,449 shares subject to EGI's Put Right for a total of 1,837,828 that the Hubers were purportedly responsible for purchasing from EGI).

Coderch's argument is nothing more than a misguided attempt to confuse the issues before this Court. Pursuant to the Arbitration Award, Coderch is responsible, jointly and severally, for the purchase of all of EGI's 7,544,449 shares in accordance with the "Put Right" provision of the VSR Shareholders' Agreement. See Arbitration Award [D.E. 1-5 at 103]. The Huber Settlement has resulted in a $750,000 credit to Coderch being applied to the purchase price due from Coderch. Nothing in the VSR Shareholders' Agreement or the Arbitration Award supports the Dies Report's and the Supplemental Dies Report's proposed further reduction to the purchase price based on the Hubers' percentage ownership of VSR shares.

Accordingly, the undersigned recommends that the purchase price of EGI's shares be adjusted only by the $750,000 credit for the Huber Settlement, for an adjusted purchase price of $27,301,296.33. See Reply [D.E. 377 at 2, 7].

    2. <u>Whether issues with the Hubers give Coderch a new defense to confirmation.</u>

Coderch's argument that the Huber Settlement opens the door to a new defense to confirmation of the Arbitration Award has been preempted by the Court's Order on Objections to

Magistrate Judge Order (hereafter, "January 27, 2021 Order") [D.E. 391]. Therein, the Court explained:

> [U]nder the mandate rule, the Court's role is circumscribed. "The mandate rule requires a district court to strictly comply with the terms of a circuit court's opinion when a case is remanded" and "may not alter, amend, or examine the mandate, or give any further relief, but must enter an order in strict compliance with the mandate." *Rhiner v. Wexford Health Sources, Inc.*, No. 15-cv-14332, 2018 WL 10076759, at *2 (S.D. Fla. April 23, 2018) (White, Mag. J.), *report and recommendation adopted*, 2018 WL 10076760 (May 31, 2018) (Rosenberg, J.). When the circuit court issues a limited mandate, the "trial court is restricted in the range of issues it may consider . . . [r]uling on matters outside the scope of a limited mandate constitutes an abuse of discretion." *United States v. Irey*, 458 F. App'x 854, 855-56 (11th Cir. 2012).
>
> Here, the Eleventh Circuit remanded this matter to the Court for the limited purpose of "recalculat[ing] the purchase price of [EGI's] shares using the January 13, 2012, conversion date" and "enter[ing] an order requiring both Mr. Coderch and EGI to perform their obligations under Section 10 of the [VSR] Shareholders' Agreement." (ECF No. 384, at 8.) . . . Application of the mandate rule serves the important purpose of creating "efficiency, finality and obedience within the judicial system." *United States v. Stein*, 964 F.3d 1313, 1324 (11th Cir. 2020). For the Court to reopen proceedings beyond the Eleventh Circuit's limited mandate would be an abuse of discretion.

See January 21, 2021 Order [D.E. 391 at 2] (some alterations in original).

Based on the foregoing, there is no basis for Coderch to present a new defense to confirmation of the Arbitration Award.

### C. EGI's request for sanctions in the proposed Amended Judgment.

EGI requests that the Court incorporate into the Amended Judgment a mechanism for enforcing it, in anticipation of Coderch's potential non-compliance, through the imposition of a "hefty monetary fine." See Motion for Amended Judgment [D.E. 341 at 3–8].

In making this request, EGI borrows from the following passage in the Mandate:

> [T]he District Court has plenty of tools in its chest to deal with a party's failure to comply with the Court's own orders. For example, the District Court might set a specific date on which performance under its order is due, and provide that for every day after the deadline that the party refuses to comply, the District Court will impose a hefty monetary fine on the offending party. Those accumulating fines

would then be enforceable as money judgments against the offending party. See Mandate [D.E. 340 at 26 n.14].

The undersigned recommends that EGI's request be denied as being premature at this juncture. Either party who wishes to enforce the terms of the Amended Judgment in the event of a failure to comply may do so, if and when such failure occurs. In that event, the Court may find it appropriate to adopt the Eleventh Circuit's suggested remedy or to implement one of its own.

D. EGI's request of post-award, pre-judgment interest.

EGI also requests that the Amended Judgment include "post-award, prejudgment interest on the amount that the arbitrator ordered Mr. Coderch to pay, from the date of the award through the date of this Court's [Amended] [J]udgment." See Motion for Amended Judgment [D.E. 341 at 8–10]. The undersigned recommends that EGI's request be denied as the request falls well outside of the Mandate's directive and the limited scope of these proceedings as described in the Court's January 27, 2021 Order. See Mandate [D.E. 340 at 26–27]; January 27, 2021 Order [D.E. 391 at 2].

E. Specific Performance

The Mandate requires that the Court "enter an order requiring both Mr. Coderch and EGI to perform their obligations under Section 10 of the [VSR] Shareholders' Agreement by paying the purchase price for the relevant shares, after proper calculation and conversion, and tendering those shares, respectively." See Mandate [D.E. 340 at 26–27]. The Eleventh Circuit provided the following guidance on how to ensure specific performance:

> To facilitate the transfer, the District Court could . . . require[] both parties to tender their performance to the Clerk of Court, as is customary in cases of forced sales, rather than directly to each other. That way, once the Clerk receives the shares from EGI and the payment from Mr. Coderch, he or she could effectuate the simultaneous transfer of shares for money that the [VSR] Shareholders' Agreement and the Arbitration Award contemplate. Such an approach would also ensure that

>neither party ends up with a windfall if the other reneges (as each party here worries the other will do) and would put to rest this never-ending game of chicken concerning who will perform first and risk ending up with nothing at all.

See Mandate [D.E. 340 at 26 n.14]. In accordance with the Eleventh Circuit's suggestion, the undersigned recommends that the Amended Judgment require that, within ten days from the date of entry, the parties make the following deposits in the Court Registry: Coderch shall deposit the purchase price of $27,301,296.33 for EGI's shares in VSR; and EGI shall deposit its 7,544,449 shares in VSR; and that, upon satisfaction of both of these requirements, the Clerk of Court shall simultaneously transfer the $27,301,296.33, plus accrued interest, to EGI and the 7,544,449 shares Coderch.

## RECOMMENDATION

Based on the foregoing considerations, the undersigned **RESPECTFULLY RECOMMENDS** that EGI's Motion for Amended Judgment [D.E. 341] be **GRANTED IN PART** as follows:

- That the purchase price for EGI's VSR shares be SET at **$28,051,296.33.**
- That a $750,000 credit be applied to the purchase price to reflect the Huber Settlement, for an adjusted purchase price of **$27,301,296.33.**
- That the proposed Amended Final Judgment attached hereto as **Exhibit A** be **ENTERED**.

Pursuant to Local Magistrate Judge Rule 4(b), the parties have **fourteen days** from the date of this Report and Recommendation to file written objections, if any, with the Honorable Robert N. Scola, Jr. Failure to timely file objections shall bar the parties from attacking on appeal the factual findings contained herein. See Resolution Tr. Corp. v. Hallmark Builders, Inc., 996 F.2d 1144, 1149 (11th Cir. 1993). Further, "failure to object in accordance with the provisions of [28 U.S.C.] § 636(b)(1) waives the right to challenge on appeal the district court's order based on

unobjected-to factual and legal conclusions." See 11th Cir. R. 3-1 (I.O.P. - 3).

RESPECTFULLY SUBMITTED in Chambers at Miami, Florida this 1st day of March, 2021.

_____
ALICIA M. OTAZO-REYES
UNITED STATES MAGISTRATE JUDGE

cc: United States District Judge Robert N. Scola, Jr.
    Counsel of Record

# EXHIBIT A

UNITED STATES DISTRICT COURT
SOUTHERN DISTRICT OF FLORIDA

Case No. 15-20098-CIV-SCOLA/OTAZO-REYES

EGI-VSR, LLC,

    Plaintiff,

v.

JUAN CARLOS CELESTINO
CODERCH MITJANS a/k/a JUAN CODERCH,

    Defendant.
_____/

## [PROPOSED] AMENDED FINAL JUDGMENT

Pursuant to the Mandate issued by the Eleventh Circuit Court of Appeals, it is ORDERED AND ADJUDGED as follows:

1) The Arbitration Award in favor of EGI-VSR, LLC ("EGI") and against Juan Carlos Celestino Coderch Mitjans, a/k/a Juan Coderch ("Coderch") dated January 13, 2012 is RE-CONFIRMED.

2) Pursuant to the terms of the Arbitration Award, an Amended Final Judgment of Specific Performance is hereby ENTERED.

3) Within ten business days of the entry of this Amended Final Judgment:

    a. Coderch SHALL DEPOSIT into the Court Registry the amount of $27,301,296.33, and

    b. EGI SHALL DEPOSIT in the Court Registry its 7,544,449 shares in Viña San Rafael S.A. ("VSR").

Upon satisfaction of conditions (a) and (b) above, the Clerk of Court shall simultaneously transfer the 7,544,449 VSR shares to Coderch and the $27,301,296.33, plus accrued interest, to EGI.

4) EGI shall retain all shareholders rights and powers in the 7,544,449 VSR shares while they are being held in the Court Registry and until tender of payment of $27,301,296.33, plus accrued interest, to EGI by the Clerk of Court.

5) In the event that EGI secures other judgments enforcing the same Arbitration Award underlying this action, then any payment received by EGI pursuant to this Amended Final Judgment will constitute payment toward any other enforcing judgment based upon this same Arbitration Award, such that EGI may not recover more in total on account of this Amended Final Judgment, and any other enforcing judgments, than the payment required under this Amended Final Judgment.

6) The Court retains jurisdiction to enforce the terms of the Amended Final Judgment.

**DONE AND ORDERED** in Miami, Florida, this _____ day of _____, 2021.

_____
ROBERT N. SCOLA, JR.
UNITED STATES DISTRICT JUDGE