United States District Court
for the
Southern District of Florida

| | |
|---|---|
| EGI-VSR, LLC, Petitioner, | ) |
| | ) |
| v. | ) |
| | ) Civil Action No. 15-20098-Civ-Scola |
| | ) |
| Juan Carlos Celestino Coderch | ) |
| Mitjans, Respondent. | ) |

### Order On Objections to Magistrate Judge Order

On August 7, 2020, the Eleventh Circuit issued its mandate, remanding this matter to the Court "with the following instructions: (1) to recalculate the purchase price of the shares using the January 13, 2012, conversion date; and (2) to enter an order requiring both Mr. Coderch and EGI to perform their obligations under Section 10 of the Shareholders' Agreement by paying the purchase price for the relevant shares, after proper calculation and conversation, and tendering those shares, respectively." (ECF No. 340.) The Court's May 31, 2018 order (ECF No. 41), however, was affirmed in all other respects. Indeed, in its order, the Eleventh Circuit stated, "while the District Court properly found that the Arbitration Award should be confirmed . . . the Court committed two errors in enforcing that award." (ECF No. 340, at 26.) First, the Circuit found that the Court used the wrong conversion date and second that the Court failed to require EGI to tender its shares upon payment, as was required under Section 10 of the Shareholders' Agreement. (ECF No. 340, at 26-27.) The Circuit's mandate was aimed at curing these two deficiencies only as the Circuit found no error in the Court's determination that the arbitration award should be enforced in EGI's favor.

The day the Eleventh Circuit issued its mandate, the Plaintiff moved the Court to amend its judgment in light of the Eleventh Circuit's decision. (ECF No. 341.) The Court referred that motion, together with a variety of discovery motions, for adjudication by United States Magistrate Judge Alicia M. Otazo-Reyes. (ECF No. 355.) Judge Otazo-Reyes issued her report and recommendation on the Plaintiffs' motion for amended judgment on March 1, 2021. (ECF No. 401.) On March 15, 2021, both parties filed objections (ECF Nos. 402, 403[1], 404), which the Court will now address in turn.

---

[1] Respondent Juan Coderch filed his objections on March 15, 2021 with limited redactions. On March 18, 2021, upon agreement of the parties, Mr. Coderch filed an unredacted version of his objections. The Court will refer only to the unredacted version of the filing, ECF No. 404.

1. **Legal Standard**

In order to challenge the findings and recommendations of a magistrate judge, "a party must file written objections which shall specifically identify the portions of the proposed findings and recommendation to which objection is made and the specific basis for objection." *Macort v. Prem, Inc.*, 208 F. App'x 781, 783 (11th Cir. 2006) (quoting *Heath v. Jones,* 863 F.2d 815, 822 (11th Cir.1989)) (alterations omitted). The objections must also present supporting legal authority. Once a district court receives "objections meeting the specificity requirement set out above," it must "make a *de novo* determination of those portions of the report to which objection is made and may accept, reject, or modify in whole or in part, the findings or recommendations made by the magistrate judge." *Macort*, 208 F. App'x at 783-84 (quoting *Heath,* 863 F.2d at 822) (alterations omitted). To the extent a party fails to object to parts of the magistrate judge's report, those portions are reviewed for clear error. *Id.* at 784 (quoting *Johnson v. Zema Sys. Corp.,* 170 F.3d 734, 739 (7th Cir.1999)). A court, in its discretion, need not consider arguments that were not, in the first instance, presented to the magistrate judge. *Williams v. McNeil*, 557 F.3d 1287, 1291 (11th Cir. 2009).

2. **Analysis**

    **A. Mandate Rule**

As the Court detailed in its prior order affirming certain of Magistrate Judge Otazo-Reyes's discovery orders, under the mandate rule, the Court's role is circumscribed. (ECF No. 391, at 2.) "The mandate rule requires a district court to strictly comply with the terms of a circuit court's opinion when a case is remanded" and "may not alter, amend, or examine the mandate, or give any further relief, but must enter an order in strict compliance with the mandate." *Rhiner v. Wexford Health Sources, Inc.*, No. 15-cv-14332, 2018 WL 10076759, at *2 (S.D. Fla. April 23, 2018) (White, Mag. J.), *report and recommendation adopted,* 2018 WL 10076760 (May 31, 2018) (Rosenberg, J.). When the circuit court issues a limited mandate, the "trial court is restricted in the range of issues it may consider . . . [r]uling on matters outside the scope of a limited mandate constitutes an abuse of discretion." *United States v. Irey*, 458 F. App'x 854, 855-56 (11th Cir. 2012). Application of the mandate rule serves the important purpose of creating "efficiency, finality and obedience within the judicial system." *United States v. Stein*, 964 F.3d 1313, 1324 (11th Cir. 2020).

As stated above, the Eleventh Circuit remanded this matter to the Court with specific instructions. Courts are permitted to deviate from a circuit court's limited mandate under specific enumerated circumstances. These include,

"where: (1) a subsequent trial produces substantially different evidence, (2) controlling authority has since made a contrary decision of law applicable to that issue, or (3) the prior decision was clearly erroneous and would work manifest injustice." *Moulds v. Bullard*, 452 F. App'x 851, 853 (11th Cir. 2011) (internal quotations omitted). The clearly erroneous standard is met when the "legal error is beyond the scope of reasonable debate." *Id.* (internal quotations omitted). With this backdrop in mind, the Court now turns to the parties' objections.

### B. Petitioner's Objections

The Petitioner raises three objections to the Magistrate Judge's Report. First, EGI states that the Report fails to clarify it is entitled to post-judgment interest; second EGI states the Report should have found EGI is entitled to post-award, prejudgment interest; and finally, EGI states the Report should have set forth sanctions for the Respondent's potential non-compliance with the Court's forthcoming amended final judgment.

Turning to the first argument raised by EGI, which is less of an objection and more of a request for clarification, the Court agrees with EGI that to the extent Magistrate Judge Otazo-Reyes's Report fails to clearly state that EGI is entitled to post-judgment interest, the Court agrees that EGI is entitled to such relief. At a hearing on EGI's motion, Magistrate Judge Otazo-Reyes confirmed as much, stating "post-judgment interest . . . [t]hat is clear and basically required." (ECF No. 400, at 45:20-22.) The Court ordered post-judgment interest be granted to EGI in its June 4, 2018 order entering final judgment in favor of EGI. In that order, the Court stated "EGI-VSR shall be entitled to post-judgment interest to be calculated in accordance with 28 U.S.C. § 1961." (ECF No. 43.) As this aspect of the Court's earlier order was left unaffected by the Circuit's mandate, the Court grants EGI's request to clarify the Report to make clear that EGI is entitled to collect post-judgment interest.

Second, the Court agrees with the Report that EGI's request for post-award, prejudgment interest falls outside the Eleventh Circuit's mandate to the Court. While EGI states in its briefing that post-award, prejudgment interest is justified because of the delay EGI has experienced in recovering its award, the Court notes that EGI was aware of Mr. Coderch's ability to appeal the Court's order confirming the award, but failed to previously request post-award, prejudgment interest when the Court issued its final judgment initially in this matter. Indeed, a review of EGI's initial motion to confirm award merely sought "post-award interest," failing to make any request for post-award, prejudgment interest. (ECF No. 1, at 10.)

To the extent EGI asks the Court to exercise its equitable powers to grant post-award, prejudgment interest as one of the "tools in its chest to deal with a party's failure to comply with the Court's own orders" (ECF No. 340, at 26) the Court finds it is improper for the Court to entertain such a request at this juncture. Indeed, as contemplated by the Eleventh Circuit, if either party fails to comply with the Court's order, consideration of pre-judgment interest or other sanctions may be appropriate, provided either party moves for such relief from the Court outside the scope of EGI's motion to enter an amended final judgment in a manner consistent with the Eleventh Circuit's mandate. Should Mr. Codrech fail to comply with the Court's order, the Court will certainly entertain a request for prejudgment interest or other sanctions, as appropriate.

For similar reasons, the Court also declines EGI's request to include sanctions in the amended judgment. The Court agrees with Magistrate Judge Otazo-Reyes's Report, which found it is premature for the Court to enter sanctions, which may be considered if and when either party fails to comply with the terms of the Court's amended judgment. The Court therefore finds unconvincing EGI's second and third objections to the Report.

### C. Respondent's Objections

The Court next turns to the Respondent's objections to the Magistrate Judge's Report. First, the Respondent states the Report fails to account for the shares the Hubers and EGI agreed to release from the put right obligation, giving a windfall to EGI; second, the Report denied Mr. Coderch the ability to raise his public policy defense in violation of the law of the case doctrine and mandate rule; and third, Mr. Coderch disagrees with the manner in which the purchase price was calculated. Mr. Coderch also disagrees with the proposed final judgment, attached as an exhibit to the Report. He argues the provision allowing EGI to maintain all shareholder rights and powers while the VSR shares are held in the Court's registry is beyond the Eleventh Circuit's mandate, and second, takes issue with the judgment being titled an amended final judgment.

Turning first to the Respondent's third objection the Court finds the Magistrate Judge's report cogent and compelling on this issue, and affirms and adopts it in all respects. Mr. Coderch challenged the manner in which the purchase price was calculated before the Eleventh Circuit, and the Eleventh Circuit noted in its opinion that the formula utilized "track[ed] precisely the language of Section 10 of the Shareholders' Agreement." (ECF No. 340, at 19.) The Eleventh Circuit also noted that EGI "performed the calculations laid out in the Arbitration Award"  and filed a "detailed calculation and a proposed judgment that listed the final purchase price" for the District Court to consider

when entering its order on EGI's motion to confirm. While the purchase price formula relied upon by the Court tracked the parties' agreement "precisely," it failed to utilize the correct conversion date and therefore, per the Circuit's mandate, must be corrected in this respect only. Consistent with the Circuit's decision, the Court will perform the purchase price calculations using the same formula as was initially used by the Court and reviewed by the Circuit, but will use January 13, 2012, rather than January 23, 2012 as the conversion date.

Mr. Coderch's first and second objections center around a deal that was entered into between EGI and Richard Leslie Huber and Alexander Leslie Huber, non-parties that the arbitration award had found breached the shareholders' agreement with EGI, together with Mr. Coderch. As the Report summarized, EGI attempted to enforce the award against the Hubers in the Southern District of New York, but the petition was dismissed as time-barred. Thereafter, while Mr. Coderch's appeal on the Court's final judgment was pending, the Hubers and EGI entered into a confidential settlement agreement, pursuant to which the Hubers agreed to pay EGI $750,000.00 in exchange for the resolution of EGI's claims against them. The agreement also stated that none of EGI's shares would be transferred back to the Hubers.

With respect to the Huber settlement, Mr. Coderch argues that the Report gives EGI a windfall by forcing the Respondent to purchase the shares that were released by way of EGI's settlement with the Hubers. The Court again finds Judge Otazo-Reyes's report cogent and compelling. As Judge Otazo-Reyes noted, and as was pointed out by the Eleventh Circuit, "the obligations and liabilities of the controlling shareholders under the Shareholders' Agreement are joint and several." (*See* ECF No. 340, at 7; ECF No. 401, at 6.) The award also states, Mr. Coderch is "jointly and severally liable for the obligations arising" from the parties' agreement. (ECF No. 1-5, at 55.) Accordingly, Magistrate Judge Reyes found, and the Court agrees, that Mr. Coderch's argument "is nothing more than a misguided attempt to confuse the issues before the Court." (ECF NO. 401, at 6.) The settlement between EGI and the Hubers resulted in Magistrate Judge Otazo-Reyes recommending a $750,000.00 credit be applied to the purchase price due from Mr. Coderch to EGI, for shares he has always been jointly and severally obligated to purchase. As a result, Mr. Coderch will end up better off, because he will receive all the of the shares that he was obligated to purchase under the parties' agreement, for which he was always jointly and severally liable, albeit at a $750,000.00 discount. While EGI states it was not required to offer this credit and did so only in an attempt to "avoid further dispute" and finally settle this almost "decade-long" disagreement, (ECF No. 406, at 5), the Court agrees with the

Report's recommendation that the Court offset any payment due to EGI by Mr. Coderch by the amount of the Huber settlement.

Finally, the Court turns to Mr. Coderch's second objection to the Report, that the Court denied the Respondent the ability to raise his public policy defense. The Eleventh Circuit previously agreed with the Court's decision that the arbitration award at issue should be confirmed, albeit with the two corrections noted above. It is anathema to the idea of finality and the mandate rule that a litigant can seek to collaterally attack a Court's prior decision where that decision is on limited remand and an exception to the mandate rule does not apply. Indeed, the Court previously determined that the Respondent's attempts to twist the mandate rule in order to attack the arbitration award anew is without basis. (*See* ECF No. 391, at 2 ("While the Defendant argues that 'new evidence' provides an exception to the mandate rule, the Defendant misconstrues that exception . . . there has been no subsequent trial that produced substantially different evidence sufficient for the Court to deviate from the Eleventh Circuit's mandate.").) Even so, as EGI points out, Mr. Coderch's arguments as to collusion between EGI and the Hubers is not new. In the arbitration award, for instance, the panel wrote "EGI is not an ally of the Hubers; there is no joint action agreement or any other type of alliance with Messrs. Huber." (ECF No. 1-5, at 55.) While Mr. Coderch stated "everything indicates that that is not the case, and that due to mutual interest they have agreed to act together against the interests of . . . Mr. Coderch" the award rejects that claim. (ECF No. 1-5, at 69.) Mr. Coderch appears to simply try a new angle on the same argument he raised before, an argument that was rejected.

With respect to Mr. Coderch's objections to the proposed final judgment, the Court also finds these objections unavailing. The Eleventh Circuit required the Court to amend its judgment so EGI would be required to tender its shares to Mr. Coderch upon his payment to EGI. The Eleventh Circuit suggested that one way to facilitate the transfer would be for both parties to tender their performance to the Clerk of the Court, rather than directly to each other. (ECF No. 340, at 26 n. 14.) It is not inconsistent with the Eleventh Circuit's mandate to clarify that EGI will retain its shareholder rights and powers over its shares while they are held by the Court. For instance, if the Court declined the Eleventh Circuit's suggestion, and simply provided a date certain for the parties to exchange the shares for payment, EGI would retain the same rights over its shares up through the date of performance. What the Eleventh Circuit's suggestion does is alleviate concerns that one party ends up with a windfall if the other reneges on its obligations to perform under the Court's order. The Court agrees that the approach suggested by the Eleventh Circuit is

best suited to putting to rest "this never-ending game of chicken concerning who will perform first and risk ending up with nothing at all." (ECF No. 340, at 26 n. 14.)

Finally, the Court also disagrees with Mr. Coderch's objection to the Court's forthcoming judgment being titled "Amended Final Judgment." (ECF No. 401, at 12.) As stated above, and irrespective of how many times Mr. Coderch says otherwise, the Eleventh Circuit stated the District Court "properly found the Arbitration Award should be confirmed" albeit with two corrections, one requiring a different conversion date to be used to calculate the purchase price, and the second requiring EGI to tender its shares to Mr. Coderch upon his payment to EGI. As the Eleventh Circuit's mandate limited the Court to completing these two tasks, the Court finds it entirely proper to call the judgment an "Amended Final Judgment."

### 3. Conclusion

For the reasons set forth above, Magistrate Judge Otazo-Reyes's ruling is **affirmed and adopted** in its entirety. (**ECF No. 401**.) The Court clarifies, however, that EGI is entitled to post-judgment interest, consistent with its earlier final judgment in this matter.

The Court **grants** EGI's motion for entry of amended final judgment upon issuance of the Eleventh Circuit's mandate (**ECF No. 341**) and will enter its amended final judgment by separate order.

**Done and ordered** at Miami, Florida, on March 30, 2021.

_____
Robert N. Scola, Jr.
United States District Judge